Armstrong *v.* Paul *et al.*

E. J. ARMSTRONG, APPELLANT, *v.* A. S. PAUL ET AL., RESPONDENTS.

Though the Constitution of the State confers the jurisdiction of cases of forcible entry and unlawful detainer on the District Courts, the Courts of Justices of the Peace continue their jurisdiction of such cases until the organization of the District Courts under the State authority.

The purpose of Section 6, Article VI., of the State Constitution was not to suspend the operation of the laws of the Territory. The former judiciary system was intended to be, and *was* continued in existence until the new one should be in a condition to exercise its functions.

The Organic Act of the Territory limiting the jurisdiction of Justices of the Peace to cases where the debt or sum claimed does not exceed one hundred dollars is applicable to an action in tort for damages, as well as to an action on contract.

APPEAL from the Civil Probate Court of Storey County, Hon. L. W. FERRIS presiding.

The facts of this case sufficiently appear in the opinion:

*Perley & DeLong,* for Appellant.

The appellant will rely upon the following points and authorities:

*First*—The Court below erred in dismissing the case, for the following reasons:

No Revenue stamp was required upon the summons, under the Act of 1864. (See secs. 151, 152, 153, 158, 163 and schedule B.)

The Act refers only to cases involving a direct money demand.

Here no demand for any particular amount of money need to have been stated in the writ.

The damages are not the main cause of action, and are only incidental to the general relief prayed for. (*Holmes* v. *Huber,* 21 Cal. 55.)

*Second*—There is no clause or sentence in the Act rendering any document invalid and of no effect, except section 158. This section does not declare instruments void simply because they have no stamp. The stamp must have been *intentionally* omitted, with intent to " *evade the provisions of the Act.*"

This is the key to that whole section. No such intent appears, and it is negatived by the fact that a stamp was put on at the earliest moment.

*Third*—The Justice had power to affix a stamp to the summons and cancel it at the time he did, and this made it good ·*ab initio*, in case any stamp was required.

*Fourth*—The objection came too late. It should have been made at the earliest moment, but the defendants demurred several days before the objection was raised.

*Fifth*—The only object of a summons is to bring a party into Court. Summons may be waived, and an appearance to the summons is a waiver of all antecedent defects.

*Sixth*—The only motion which defendants could have made would have been to set aside the summons.

This was not a jurisdictional defect. The filing of the complaint gave the Court jurisdiction, and a motion to dismiss the case in the Justice's Court or in the Probate Court upon this ground, was irregular, and properly overruled.

*Seventh*—The question concerning a stamp could not properly be raised in the Probate Court.

The case was then to be tried *de novo*. The summons had a proper stamp on it, and the time of affixing it could not properly be inquired into.

*Eighth*—The Constitution of the State did not oust the Justice of jurisdiction or give jurisdiction to the District Courts, until after the election and qualification of Judges under it. See the following sections:

Secs. 6, 7, 8 and 18, art. VI. ; also, see secs. 2, 4, 13 and 23, art. XVIII.

*Ninth*—In cases of forcible entry the jurisdiction of the Justice was not limited to the sum of one hundred dollars. The limitation applies to cases of mere money demands. (Organic Act, sec. 9; *Zander* v. *Coe*, 5 Cal. 231; *O'Callahan* v. *Booth*, 6 Cal. 63; *Howard* v. *Valentine*, 20 Cal. 287.)

*Robinson & Foster*, for Respondents.

In this case there was no stamp to the summons issued by the Justice of the Peace.

The amount of damages claimed by appellant in the suit is

five thousand dollars. By the Revenue Act of 1864, Laws of Congress, p. 293, it is provided that a stamp shall be attached to every summons issued by any Court not of record, when the sum in demand is over one hundred dollars, and if this is not done the same "*shall be held invalid and of no effect.*" The defendants appeared and made this objection in *limini litis.*

This fact, however, says the appellant, does not appear from the transcript, and it is contended that we waived our exceptions by answering over.

It does not appear from the transcript, when the motion to dismiss was filed, nor when any of the other proceedings were filed—the Justice having omitted to mark them "filed." But by examining the Justice's minutes in the transcript it will be seen that this motion to dismiss was first made and overruled, then the demurrer was presented and overruled, and then the answer and trial.

It will also appear from said minutes that copies of the defendants' pleadings were required to be served on plaintiff sometime before the case was set for trial. Because of this order these copies, service of which is acknowledged by Perley & DeLong, were given to those attorneys for their information of what the defendants relied on. The objection to the validity of the summons, therefore, was not waived, but was first presented and acted upon by the Justice, as appears from his minutes. With regard to the validity of this objection, respondents cannot claim to be able to add anything to the clear and positive mandate of the law. It is an imperative injunction by the sovereign will of the Federal Congress that all summons, to have any effect whatever, shall have a Revenue stamp on the same.

Nothing can add to the clearness of the declaration or substract from its binding and most imperious obligation.

The second point is, that the Justice of the Peace cannot entertain jurisdiction in any case where the sum in controversy exceeds one hundred dollars. The authority for this objection is found in the Act organizing the Territory of Nevada. Its provisions are likewise too plain and explicit to derive any aid from argument or illustration to establish them.

No words can add to the force of their authority, nor can any subtract from their binding and most conclusive obligation.

It is said by appellants that the magistrate should have dismissed the objectional demand, so as to be clothed with power to hear and determine the case. If the appellant had so moved the Court, there would be some reason, perhaps, in his objection. But as he himself did not desire it, or what is the same thing, did not require it, it does not now lie in his mouth to make the objection.

That question was never submitted to the Court below, and this Court only *reviews* the acts or proceedings of other Courts and initiates no new or original examinations.

Opinion by BROSNAN, J., LEWIS, C. J., concurring.

The facts material to be noticed in this case are as follows:

Armstrong instituted suit before a Justice of the Peace against the respondents, under the forcible entry and unlawful detainer Act, to recover possession of the "International Hotel," in the City of Virginia. Summons was issued on the 3d, returnable on the 17th day of October, 1864. The plaintiff alleged the monthly rents to be twelve hundred dollars, and in his complaint claimed five thousand dollars damages to be trebled. On the return day of the summons, the parties appeared, and the case was continued until the 22d day of October. On that day the case was further adjourned, and set for trial on the 28th, and the defendants ordered to serve and file an answer on the 24th day of October, 1864. On the day of the trial, the defendants moved to dismiss the case because the summons was returnable more than ten days after it was issued, and for the further reason that it did not have on a revenue stamp. The Justice thereupon affixed the proper revenue stamp, and overruled the motion. A motion was then made to dismiss the case on the ground that by the Constitution of the State, jurisdiction over cases of this description was vested in the District Courts, and for the reason that the amount claimed was over three hundred dollars. This motion was also denied by the Justice. The case was tried by a jury, a verdict rendered for the plaintiff, and a judgment for four thousand four

hundred and fifty-nine dollars and fifty cents was entered by the Justice on the 2d day of November, 1864.

The defendants below appealed from the judgment of the Probate Court of Storey County, and that Court dismissed the case for want of jurisdiction in the Justice. From this judgment Armstrong appeals to this Court.

It is not necessary to inquire in this case what may be the legal effect or consequence of the omission to place a revenue stamp upon the summons, or whether one may not be affixed by the Justice, as was done in this instance; because we hold that the objection to the summons on that ground came too late, having been first made some days after an appearance and answer by the defendants. We proceed therefore to determine whether the Justice had jurisdiction.

It is argued by the respondents' counsel, that upon the adoption of the State Constitution in the month of September last, or if not then, upon the date of the President's Proclamation admitting Nevada as a State, which was on the 31st day of October, 1864, that jurisdiction in actions of forcible entry and unlawful detainer became vested in the District Courts exclusively. The argument is based upon Art. VI, sec. 6 of the Constitution. This section is undoubtedly intended to confer this jurisdiction upon the District Courts; but, of course, it could not attach until such Courts should be created and operative. The Constitution must be so interpreted as to give a practical meaning and efficacy to all its parts if possible. It will be seen upon examination of section 18 in the same article (Art. VI, sec. 18), that no judicial officer was superseded, nor the organization of any Court of the Territory changed, until the several officers provided for in that article should be elected and qualified. District Judges are officers therein designated. They were to be elected at the General election in November, 1864, and those then elected were required to qualify and enter upon the duties of office on the first Monday of December succeeding their election. (Con., Art. VII, schedule, sec. 1.) Certainly they had no power or authority to act as District Judges before their qualification as such. Again, the Constitution provides that all laws of the Territory, not repugnant thereto, should remain in force, etc. (Con., Art. XVII, sec. 2, schedule.)

By these provisions, Justices of the Peace and their Courts, and the statutes hitherto governing them, were continued until changed or superseded by the new order of things.    This would leave no void nor delay in the administration of justice.    But if the construction of respondents' counsel were correct, there would be no Court in existence from October 31st to the 5th day of December following, to take cognizance of this case, or of any case of the like kind.

This is not reasonable.    In whatever else the framers of the Constitution may have failed to provide against possible exigencies, they certainly are not chargeable with so great an oversight.

The purpose of section 6, Article VI, was not to suspend the operation of any portion of the laws of the Territory; the former judiciary system was intended to be, and was continued in existence until the new one should be in a condition to exercise its functions.    It follows, therefore, that the Justice did not lose jurisdiction during the interval above mentioned, as counsel contend.

Aside from the common sense view thus taken by the Court, we are fully supported by authority.    The identical question has been raised and decided in California since the adoption of the recent amendments to the Constitution of that State.    In the matter of *Carlos Oliverez*, (21 Cal. 415), the point is discussed and determined.

Had the case rested here, the judgment of the Probate Court should be reversed without further comment.    But the record, outside of the transcript from the docket of the Justice, shows that a further objection to the jurisdiction was raised, viz : that the Organic Act of the Territory limited the jurisdiction of Justices to demands not exceeding one hundred dollars ; and that the demand in this case exceeded that amount.    As this question of jurisdiction is one that may be raised at any time, we cannot overlook this objection, notwithstanding it is not manifest at what stage of the proceeding it was made.    Not appearing in the minutes of the Justice, we assume it was first advanced before the Probate Court.

In the Act of Congress organizing the Territory, it is provided that Justices of the Peace shall not have jurisdiction in

any case where the title to land may be in dispute, " or where the debt or sum claimed shall exceed one hundred dollars."

It is claimed by the counsel of appellant that this limitation relates only to matters of contract, as money demands, and not to actions *ex delicto*, and consequently that the present action is not within the purview of the Act. To sustain this position, we are referred to decisions made by the Supreme Court of California, wherein that Court has held that in actions of this character Justices of the Peace are not limited as to the amount of damages to be awarded, notwithstanding they are so limited in other actions.

It is unquestionably true that the Courts of that State have so decided in several instances; but it must be remembered that there was no Constitutional restriction imposed in California upon the Legislature in the grant of jurisdiction in this action to Justices of the Peace. On the contrary, the action of forcible entry, etc., was held in California as belonging to that class of " special cases " mentioned in the Constitution of that State which the Legislature was at liberty to dispose of as its wisdom should dictate. Accordingly, the Legislature did lodge original jurisdiction over this " special " action in Courts of Justices of the Peace. And as no other Court had original jurisdiction, it was necessary to the administration of full and complete justice that such Courts should possess the power to award damages commensurate with the degree and character of the injury sustained by the complainant, although the amount might exceed the limit of their jurisdiction in other cases. (Vide *Small* v. *Gwinn*, 6 Cal. Rep. 449.)

But our Organic Act had not entrusted such power or discretion to the Territorial Legislature. Therefore, while we entertain great respect for the decisions of the Supreme Court of the State of California, we do not regard them upon this question as controlling authority.

From the language of the Act there is no escape. The Justice shall not have jurisdiction " when the debt or *sum claimed* shall exceed one hundred dollars." Can language be more explicit? There is no exception; it embraces all cases cognizable in Justices' Courts, whether they arise from contract or in *tort*. And upon reflection I am unable to see any good

reason for the distinction claimed by counsel.    Actions in tort are generally more complex and difficult to dispose of than actions growing out of such contracts as usually come before a Justice of the Peace.    And when the law limits the jurisdiction in the more simple action to a certain fixed amount, it would reasonably follow *a fortiori*, that the law would equally limit it in the more complicated case. •

I conclude, then, that as to the amount of damages claimed the Justice had not jurisdiction.    Nevertheless, the Probate Court, in my judgment, erred in dismissing the case.    The action was for the possession of the premises—of that matter the Justice had jurisdiction—and the plaintiff should not have been turned out of Court without a trial.    The prayer for damages might well have been disregarded or expunged without prejudice to the action or injuriously affecting any right of the defendants.    The complaint set up a good cause of action, and should not have been dismissed for having contained a prayer for relief not within the jurisdiction of the Court.    No damages need be stated or claimed.

The authorities so declare, as will appear upon examination. (*Howard* v. *Valentine*, 20 Cal. R. 282 ;    *Van Etten* v. *Jilson*, 6 Cal. 19, 413–449 ; *Holmes* v. *Horber*, 21 Cal. 55.)

The judgment of the Probate Court will therefore be reversed.    Ordered accordingly.

Justice BEATTY having been of counsel did not participate in the decision..