[No. 13946.   Department Two. — April 26, 1892.]

JOHN MALONE, RESPONDENT, v. GEORGE G. ROY, APPELLANT.

MORTGAGE BY DEED ABSOLUTE — SECURITY FOR DEBT — FINDING AGAINST EVIDENCE — CONCLUSION OF LAW. — In an action to quiet title to land claimed by the plaintiff under a deed from the defendant, absolute on its face, but which the defendant contends was intended as a mortgage, where the evidence clearly shows without substantial conflict that the deed was intended by both parties as mere security for a debt, a judgment for the plaintiff, based on a finding by the court that it was not intended as security for a debt, will be reversed upon appeal, and the fact that the plaintiff testified that, in his opinion, it was not a mortgage is immaterial.   That the instrument was a mortgage is a conclusion of law from the fact that at the time it was executed it was intended merely as security for a debt of the defendant.

APPEAL from a judgment of the Superior Court of Del Norte County, and from an order denying a new trial.

The facts are stated in the opinion.

*L. F. Coburn*, and *Sawyer & Burnett*, for Appellant.

*R. W. Miller*, and *Lucas & Miller*, for Respondent.

VANCLIEF, C. — This is an action to quiet plaintiff's alleged title to a tract of land containing 360 acres situate in the county of Del Norte, and known as the "Gordon ranch," in which the judgment of the trial court was in favor of the plaintiff.   Defendant appeals from the judgment, and from an order denying his motion for a new trial.

The plaintiff claims title to the land by a grant, bargain, and sale deed to him from the defendant, dated January 4, 1888, reciting a paid consideration of $7,532.50, which, upon its face, appears to be absolute.   But the defendant contends that the deed was intended merely as security for a debt which defendant owed to plaintiff for money loaned by the latter to the former, and therefore that it is only a mortgage.   The court found that the deed was not intended as security, but that it was

intended to be what it purports to be,— an absolute conveyance of the legal title. Does the evidence justify this finding, is the only question presented for decision.

Prior to the third day of January, 1888, the defendant did not have the legal title to the land, but had been in possession thereof several years, under a contract to purchase from one Gordon, to whom, on January 3, 1888, he was still indebted for a balance of the purchase-money, which then amounted to about $6,550. A few days prior to this date, he applied to plaintiff for a loan of money sufficient to pay Gordon, and thereby to procure a deed for the land, offering a mortgage on the land as security. Plaintiff at first consented to loan the money for two years, with interest at the rate of one and a quarter per cent per month, compounded annually; but the negotiations finally resulted in the following transactions: On January 3, 1888, plaintiff paid defendant's debt to Gordon for balance of purchase-money, and Gordon then conveyed the land to defendant. On the following day (January 4th), defendant executed to plaintiff the deed in question, and at the same time plaintiff executed to defendant, on a separate paper, the following instrument: —

"CRESCENT CITY, CAL., Jan. 4, 1888.

"Whereas, George G. Roy has this day made and executed a deed to John Malone of the Gordon ranch, in Del Norte County, Cal., consisting of the following described pieces or parcels of land, to wit [here follows description], containing 360 acres of land, with the tenements, etc., for the sum of seven thousand five hundred and thirty-two dollars and fifty cents, — now, therefore, this witnesseth, that if the said George G. Roy shall, on or before the fourth day of January, 1889, pay to the said John Malone the full sum of seven thousand five hundred and thirty-two dollars and fifty cents ($7,532.50), then the said John Malone will reconvey the above-described premises to the said George G. Roy; and if the payment as above specified shall not be paid on the fourth day of January, 1889, then this obligation shall

be void, and the said Roy agrees to surrender the same
to the said John Malone.          JOHN MALONE."

The price ($7,532.50) for which, according to this in-
strument, plaintiff agreed to reconvey, is composed of
the principal sum paid Gordon, and the interest thereon
for one year at one and a quarter per cent per month,
together with the estimated taxes on the land for the
same year.

Defendant testified that the deed was given as mere
security for the payment of his debt to plaintiff, and one
year's interest thereon at the rate of one and a quarter
per cent per month, and his testimony is corroborated
and strengthened by numerous circumstances, but most
effectively by the testimony of the plaintiff.

On his own behalf plaintiff testified: "I recognize the
deed just filed in evidence, and know the land therein
described, and am still the owner thereof; have not dis-
posed of it since, and am still in possession of it, and
was at the time of the commencement of this action."

On cross-examination, he testified as follows: "The
consideration for the deed was $7,532.50.

"Q. As matter of fact, Mr. Malone, the money you
paid was $6,670?   A. I bought the indebtedness that
defendant owed Gordon, *and the interest for a year at one
and a quarter per month was added;* the taxes were also
added, and this made $7,532.50.   My business now is
farming; at the time the deed was passed it was loaning
money, buying and selling land.   I made quite a busi-
ness of loaning money, *and my usual rate is and has been
for several years past one and one quarter per cent per month.*
Several days prior to the execution of this deed [plain-
tiff's exhibit A] either the defendant, or Mr. Miller for
him, asked me for a loan of six thousand six hundred
dollars.   There was a good deal of talk about it.   Mr.
Miller was then my attorney, but he came to me in re-
gard to defendant,— he was acting as attorney for defend-
ant,—to see if I would pay off the Gordon indebtedness,
which I, through Mr. Miller, agreed to pay off.   At first,
I was to be secured by a mortgage on the premises for

two years. Mr. Miller, as defendant's attorney, and defendant came to me separately several times, and at last I agreed to give him two years, by his giving me a deed, and paying one and a quarter per cent on it. After that, defendant refused to take two years; all he wanted was one year to pay me back. I told Mr. Roy (defendant) I would pay the indebtedness off if he would give me a deed to the property and *pay the interest and principal in one year*. Then I agreed I should give defendant a written agreement providing that if he paid me, I should deed back the place to him, and if not, the agreement should last no longer. They wanted me to accept a mortgage, but I would not, on account of the time it would take to foreclose it if they did n't pay it at the end of the year. I first agreed with either Mr. Miller or defendant to take a mortgage for two years, and at defendant's suggestion *the time was reduced to one year*.

" Q. Your object, then, as I understand it, Mr. Malone, in taking the deed and the bond in place of the mortgage was to prevent the trouble of foreclosing and the expense attached thereto? A. Yes, sir; that there was *to be no more expense or trouble about it.*

"Q. To secure the payment of this money? A. No, sir; a deed of this property, and that if he paid me my money back in one year, I should deed back the place to him, and if not, there was to be no more trouble. The deed was given as *bona fide*. I had a doubt that if I took a mortgage he might put me to more trouble, and I would not accept it, and to save expense and trouble I took a deed, in case he could not raise the money in one year, *and during this year defendant had the rents and profits of the ranch.*

" Q. Wasn't that a part of the consideration of the deed? A. *No, sir; the deed had nothing to do with it.* He had the rents and profits through Giacomini. I rented the place to Giacomini, and he paid me six hundred dollars down, which amount I gave defendant credit for on another debt he owed me outside of this land indebtedness at that time. The rent was twenty

dollars per cow. I don't remember how many cows there were. I think the rent came to $1,140 for the year. All the expenses I recollect of defendant paying was five dollars toward fixing the fence. Mr. Giacomini fixed some fence for which I paid him, and at my request defendant repaid me. Defendant also bought some nails and milk-pans to be used on the ranch. I paid for no repairs or improvements myself during that year, because defendant had the privilege of paying me the seven thousand dollars, and that I should deed the ranch back to him within the year. I knew when I received this deed, January 4, 1888, there was a lawsuit pending in this court relative to this property."

" Q. You remember that during that time these negotiations were going on to obtain this money from you, that you told defendant that you didn't want the place at all; all you wanted was your money and *interest?* A. Yes, sir; I may have told him that.

" Q. That was a fact; you only wanted your money back and *interest?* A. I think I said so, sir. From the time the deed was made I have *considered* myself in possession of the ranch. Defendant was to have the use of the ranch for one year from the date of the deed placed to his credit and he has had it. Through Mr. Giacomini he has received credit for the ranch and cattle both up to the time I went to receive the ranch from Giacomini; I can't say whether it was November 1st or January 1st, but think it was January 1st. My agreement with defendant was, that he should have the benefits of the ranch for the year, but that the money was to go to pay *the interest* on the principal sum he owed me. I did not consider the place *good security* for eight thousand dollars. I gave all I could for the place. *I didn't expect at the time that I should have to take the place; I thought he would redeem it.*"

Upon redirect examination he said: " After the deed was made, I did not consider defendant indebted to me in any sum in connection with this deed. I did not take any new or other evidence of indebtedness from

him, *but defendant promised and agreed to pay me, — to repay me. It was understood between defendant and myself that he would pay within the year,* and that if he did so I would redeed that property to him.

"Q. The question I want to get at is, Was there any existing promises between you and the defendant that he would pay you any money? A. The only agreement there was between us, — I gave him the agreement, — I gave defendant an agreement to the effect that if *he paid me back my money and interest,* I should redeed the place back to him; there was no existing debt at that time."

There is no evidence that plaintiff had possession of the land during the year, other than at the request of defendant he executed a lease of the land and some sixty of *defendant's* milch cows to one Giacomini, as dictated by defendant, the whole rent reserved being for defendant's use, and defendant made or paid for all repairs during the term of the lease.

It seems clearly apparent from plaintiff's testimony alone that the deed was intended by both parties as mere security for a debt, and none the less so because, in *plaintiff's opinion,* it is not a mortgage. That it is a mortgage is a conclusion of law from the fact that at the time it was executed it was intended merely as security for the payment of defendant's debt to the plaintiff. To this effect the law is too firmly established to require citation of authorities. And as there is no substantial conflict of evidence as to the intention of the parties in this respect, the finding of the trial court, that the deed was *not* intended as security for any debt, is not justified by the evidence.

I think the judgment and order should be reversed, and the cause remanded for a new trial.

BELCHER, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.