[S. F. No. 886.   Department Two.—March 8, 1899.]

## PENINSULAR TRADING AND FISHING COMPANY, Appellant, v. PACIFIC STEAM WHALING COMPANY, Respondent.

ACCOUNTING—MORTGAGEE IN POSSESSION—AGREEMENT RECITING OWNERSHIP AND REPURCHASE—COMPLAINT—DEMURRER.—A complaint for an accounting against an alleged mortgagee in possession, which alleges that plaintiff was the owner of the property at all times, and that after the time fixed by the original agreement for payment of the indebtedness secured, a new agreement was entered into for the purpose of securing the remainder of the indebtedness, by the terms of which it was recited that the mortgagee was "now the owner of the residue of the property," and declared that the property should be repurchased by the plaintiff within a specified time, and that time was of the essence of the agreement, is not subject to a general demurrer for want of sufficient facts, on the ground that the recitals of the new agreement control the allegations as to security and estop the plaintiff from alleging that defendant was not the owner of the property.

ID.—FORM OF INSTRUMENT—PURPOSE OF SECURITY—ESTOPPEL.—The court will not look to the form of the instrument, but to its real character as having been given for the purpose of securing indebtedness; and conceding that the new agreement bears no visible earmarks of a mortgage, if the fact be, as the complaint alleges, and the demurrer admits, that it was entered into for the purpose of such security, no form of words, however adroit, can estop the plaintiff from pleading and proving that fact.

ID.—PURPOSE OF INSTRUMENT A QUESTION OF FACT.—Whether it was the real purpose of the instrument to secure the residue of the indebtedness of plaintiff to defendant, as alleged, or whether its object was to establish the relation merely of vendor and purchaser, is a question of fact, which the plaintiff is entitled to have tried as an issue of fact upon answer.

ID.—STIPULATION MAKING TIME OF ESSENCE.—The stipulation purporting to make time of the essence of the contract can only have effect if the real object of the contract was to establish the relations of vendor and purchaser between the parties. It can have no effect where the admitted relation between them is that of mortgagor and mortgagee.

ID.—JURISDICTION OF SUPERIOR COURT—CONSTRUCTION OF CONSTITUTION—RELATION OF MORTGAGOR AND MORTGAGEE.—Section 5 of article VI of the Constitution, requiring actions for the enforcement of liens to be commenced in the county where the property is situated, does not preclude an inquiry by the superior court as to whether the relation of mortgagor and mortgagee exists be-

CXXIII. CAL.—44

tween parties, in aid of an action of which it has jurisdiction, though the mortgaged property is out of the state.

Id.—Jurisdiction of Accounting—Property out of State.—The superior court of this state has jurisdiction of an action in equity for an accounting between a mortgagor and a mortgagee where it has jurisdiction of the parties, although the property mortgaged is out of the state, and in the territory of Alaska; and it may require the defendant to pay over any balance found due to plaintiff upon such accounting.

Id.—Equity—Decree in Personam—Collateral Effect in Rem.—Equity generally operates by its decree *in personam;* and if the court has jurisdiction of the person of the defendant, the decree may run against him, though it may collaterally act *in rem,* and affect property out of the jurisdiction of the court.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

E. S. Pillsbury, and Ernest H. Wakeman, for appellant.

George W. Towle, Jr., for Respondent.

CHIPMAN, C.—Action for an accounting. Defendant demurred to the complaint on the grounds: 1. Insufficiency of facts; 2. Want of jurisdiction of the subject of the action. The court sustained the demurrer and gave defendant judgment dismissing the action from which plaintiff appeals. The complaint sets forth the following facts: Plaintiff and defendant are corporations organized under the laws of California, having their principal place of business at San Francisco. On and after January 15, 1892, plaintiff was and now is the owner of a certain salmon cannery situated in the district of Alaska, and until possession thereof was given to defendant plaintiff was operating said cannery; about January 15, 1892, plaintiff made its note to defendant for twenty-five thousand dollars, payable January 15, 1893, with annual interest at ten per cent; at the delivery of said note and to secure the same, and as part of the transaction, plaintiff executed an instrument in writing purporting to transfer to defendant certain personal property then at or near said cannery and then being used by plaintiff in operating the same; as part of the same transaction it was mutually agreed that defendant should take possession of said cannery and of said per-

sonal property and should operate the cannery during the canning season of 1892, "and should pay itself, out of the profits, if any, which it should realize during said canning season of 1892 from the operation of said cannery, the amount which should be due to it from the plaintiff at the end of the said canning season; and that upon being repaid the whole of the said sum of twenty-five thousand dolars, with interest as specified in said promissory note, and also such other sums as should be or become due from the plaintiff to the defendant during said canning season of 1892, the defendant should deliver to the plaintiff the possession of the said cannery, and should retransfer and redeliver to the plaintiff so much of said personal property as should not be used up in the operation of the said cannery"; defendant went into possession of said property and operated the cannery for the season of 1892, and at the end thereof rendered an account to plaintiff, from which it appeared that there then remained due on said note, from plaintiff to defendant, the sum of twenty-one thousand eight hundred and one dollars and forty-three cents; thereafter, on March 15, 1893, to secure said balance plaintiff and defendant executed a certain agreement in writing. This agreement is quite lengthy and is set out in the complaint. As respondent relies much on the terms of this agreement, it becomes necessary to state them somewhat fully. We quote as follows: "Whereas, the party of the first part (defendant) is now the owner of the residue of that certain property . . . . (referring to the property mentioned in the agreement of January 15, 1892); and, whereas, the party of the second part (plaintiff) now desires to repurchase the same from the party of the first part for the sum of twenty-one thousand eight hundred and one dollars and forty-three cents (the balance as above stated in the complaint to be due); and, whereas, the party of the first part is willing to sell said property and all thereof . . . . for said sum; now, therefore, the party of the first part agrees with the party of the second part that it will sell . . . . the above-mentioned property . . . . to the party of the second part, upon the receipt from it, prior to the first day of February, 1894, of said sum with interest . . . . from the fifteenth day of March, 1893 (the date of said alleged account and balance), until said sum and interest thereon shall be fully paid; and in consideration thereof

the party of the second part hereby promises and agrees to pay to the party of the first part, for said specified property, the said ·sum . . . . with interest thereon as aforesaid, on or before the first day of February, 1894; and, whereas, the party of the first part desires to operate and use said property during the season of 1893, and the party of the second part consents to such use; now, therefore, it is in consideration of the premises hereby further agreed that the party of the first part shall bear all the expenses of operating and using such property in canning or salting fish thereat, both or either, and shall assume and shall suffer all loss, if any, incurred or suffered . . . . in connection with such use, and that the proceeds of such use, and of the fish caught, canned or salted thereat, when received by the party of the first part, shall be applied as follows." Then follow provisions for the application of the proceeds: 1. To the repayment to first party of all expenses incurred by it in operating the cannery; 2. After such repayment first party is to retain ten thousand dollars; 3. From the surplus of the proceeds, after above payments, "there shall be paid to the party of the first part the sum that shall be due to it as interest from the party of the second part; if such surplus shall not be sufficient to pay such interest, then the same or the deficiency thereof shall be paid by the party of the second part"; 4. If any proceeds remain after above payments are made they "shall be divided between the parties hereto share and share alike." An inventory of the property was attached to the agreement, and it was provided that first party should have the use of such inventoried property without charge therefor. "It is further understood that the expense of keeping said property insured shall be a charge against and shall be paid by the party of the second part. It is further expressly understood and agreed that time is of the essence of this agreement." The complaint then alleges that during the canning seasons of 1893, 1894, 1895, and 1896 "the defendant continued in possession of said cannery and of said personal property referred to in said agreement, and operated the said cannery under the terms of said last-mentioned agreement, and in each of the said canning seasons realized, as plaintiff is informed and believes, by and from the said operation of the said cannery and use of said personal property . . . . and by and from the pro-

ceeds of the fish caught, canned, and salted at said cannery, a sum of money more than sufficient for the repayment to itself of all sums expended by it in connection with such operation . . . . and for the payment to itself of the sum due to it as interest . . . . and of all other sums which by the terms of the said agreement the defendant was entitled to pay to or retain for itself"; and upon information and belief alleges "that defendant has realized and received by and from the operation of the said cannery and use of the said personal property [during said seasons], and by and from the proceeds of the fish caught, canned, and salted at the said cannery, a sum of money more than sufficient for the repayment to itself of all sums expended by it in connection with such of its operation of said cannery and use of said property . . . . and for the payment of the said sum of twenty-one thousand eight hundred and one dollars and forty-three cents and all interest due thereon, and all other sums which by the terms of said agreement the defendant is entitled to pay to or retain for itself; but the plaintiff does not know, and without the aid of this honorable court cannot ascertain, the precise sum realized and received by the defendant," et cetera. The complaint then avers the necessity for an accounting; that plaintiff requested defendant to account before the commencement of the action; avers that defendant is still in possession of all the property; that plaintiff is willing and offers to pay to defendant any balance which upon an accounting may be found to be due defendant, and prays accordingly and for general relief.

1. Respondent contends that the complaint does not state a cause of action against it. The contention of respondent is, that the complaint shows that certain property was mortgaged to secure the payment of twenty-five thousand dollars; that after the time fixed in the original agreement for payment the mortgaged property was surrendered to respondent, an accounting was had and a new agreement made, which recites that the respondent "is now the owner" of the property and proceeds to state the terms upon which the same would be sold to appellant; that this recital is conclusive evidence of the fact that appellant had, prior to the date of the agreement, transferred the property to respondent; that this recital operates to estop appellant from

asserting that respondent was not the owner; that the allegation in the complaint that this agreement was entered into for the purpose "of securing the payment to the defendant of the said sum of twenty-one thousand eight hundred and one dollars and forty-three cents, with the interest due thereon," can in no way modify or change the effect of that recital; and, finally, that time was expressly made of the essence of the contract, and as there is no allegation of payment or tender the right to purchase terminated February 1, 1894.

As we read the complaint, the averments of which are admitted by the demurrer to be true, defendant came into possession of the property as security for the payment of the original indebtedness of twenty-five thousand dollars; no transfer of the property other than as a mortgage is alleged or anywhere in the complaint appears, and plaintiff alleges ownership of the property at all the times mentioned. At the accounting upon the first season's use of the property by defendant a balance was still due defendant. A new agreement was then entered into, which, taken in all its parts, bears, we think, inherent evidence that defendant was not in fact the owner of the property, although the agreement begins with the recital that defendant "is the owner" of the property. But, conceding that the contract bears no visible earmarks of a mortgage, still, if the fact be, as the complaint alleges and the demurrer admits, that it was entered into for the purpose of securing to defendant the payment of the balance then due to it, no form of words, however adroitly used to conceal this purpose, can estop plaintiff from pleading and proving the fact. As was said in *Russell v. Southard*, 12 How. 139: "To insist on what was really a mortgage, as a sale, is in equity a fraud, which cannot be successfully practiced under the shelter of any written papers, however precise and complete they may appear to be." It is settled beyond controversy that though a deed be absolute in form, yet if in fact it be intended by the parties to it as security for the payment of money or the performance of any lawful act, it is a mortgage; and we know of no principle of estoppel which can be invoked to prevent the fact from being disclosed. It is the real character, not the form, of the instrument to which the court will look. (Civ. Code, secs. 2924, 2925; *Husheon v. Husheon,* 71 Cal. 407; *Campbell v. Freeman,* 99 Cal. 546; *Taylor*

*v. McLain,* 64 Cal. 513.)   Possession of the grantee does not enlarge his interest in the property.   (*Murdock v. Clarke,* 90 Cal. 427.   See, also, *Adair v. Adair,* 22 Or. 115.)   The complaint distinctly alleges that the agreement of March 15, 1893, was intended as security for the debt then due; and whether that was its real purpose, or whether the object was to establish different relations between the parties, such as vendor and purchaser, is a question of fact which plaintiff, under the allegations of the complaint, is entitled to have tried as an issue of fact upon answer.   (*Wallace v. Johnston,* 129 U. S. 58; *Smith v. Smith,* 80 Cal. 323; *Malone v. Roy,* 94 Cal. 341; *Mahoney v. Bostwick,* 96 Cal. 53; 31 Am. St. Rep. 175.)

The demurrer admits the allegation that plaintiff is the owner of the property, that the agreement was for the purpose of securing the amount mentioned in it, and, that being so, the argument of respondent based upon its assumed ownership of the property is unavailing.   The fact may be as respondent claims, but that fact must be put in issue and tried as an issue of fact.

The claim of respondent that where time is of the essence of the contract the vendee can claim no right when he has failed to pay or to tender payment within the stipulated time, proceeds upon the assumption that the relation of vendor and vendee exists.   But this is mere assumption, based upon the recital of the contract that respondent "is the owner" of the property and that it imports merely a right in appellant to purchase.   But the complaint alleges, and the demurrer admits the fact to be, that the relation is that of mortgagor and mortgagee.   The clause as to time being of the essence cannot "end appellant's rights," as is claimed by respondent, for the reason, if no other, that the complaint alleges that respondent held and operated the property, during the canning seasons following that of 1893, under the agreement as it had done in 1892 and 1893.

2. Respondent contends that the court was without jurisdiction.   This contention is made upon the ground that the action is in part to redeem from a mortgage upon land, and therefore is not within the jurisdiction of the superior court of this state, the property being in Alaska (Const., art. VI, sec. 5); and that no accounting can be ordered until the court shall have first determined that respondent is a mortgagee, which latter it has not

jurisdiction to do. The clause of the constitution referred to provides that the process of the superior court "shall extend to all parts of the state, provided that all actions for the recovery of the possession of, quieting the title to, or for the enforcement of liens upon real estate, shall be commenced in the county in which the real estate, or any part thereof affected by such action, or actions, is situated." So far as the action may be said to seek to redeem, the reason the superior court would have no jurisdiction, in the present case, rests rather upon its having no extraterritorial jurisdiction than upon this clause of the constitution. But, conceding that plaintiff cannot maintain an action to redeem, the real question is, Is plaintiff entitled to an accounting in the superior court of this state, at the principal place of business of defendant? The language of the constitution does not preclude an inquiry into the character of the agreement in aid of such jurisdiction as the court may properly exercise. The provision is "that all actions for the recovery of the possession of, quieting the title to, or for the enforcement of liens . . . . shall be commenced in the county," et cetera. To ascertain whether the agreement is a mortgage does not necessarily involve the recovery of the possession of the mortgaged land. The facts alleged may be such as to entitle plaintiff to a larger measure of relief, if the action were pending in the courts of Alaska, than can be awarded in the superior court of the city and county of San Francisco, but the latter court is not for that reason deprived of jurisdiction to grant such relief as may be within its power. Appellant cites an apt case, *Cartwright v. Pettus,* 2 Cas. Ch. 214 (decided two hundred years ago), in illustration of the principle. The full report is brief: "Cartwright exhibits a bill against Pettus. They were joint tenants of lands in Ireland; the plaintiff prays an account of the profits and a partition of the lands. (12 Feb. 1675.) The lord chancellor declared that as to the profits the bill is good, the person being in England, for they are in the personalty; but as to the partition, which was in the realty, he could not here proceed, for he could not award a commission into Ireland; and the bill for a partition was in the nature of a writ of partition at the common law, which lieth not in England for lands in Ireland." (See, also, *Angus v. Angus* (1736), West's Ch. 23. The principle is

further sustained in *Van Etten v. Jilson*, 6 Cal. 19; *Howard v. Valentine*, 20 Cal. 282; *Armstrong v. Paul*, 1 Nev. 134; *Taylor v. Hollander*, 4 Mart. N. S. 535.) The complaint asks for an accounting, under the direction of the court, as to the operation of the cannery and the use of the personal property and that defendant pay over any balance found due to plaintiff upon such accounting. We think plaintiff is clearly entitled to this much relief, and that the court has jurisdiction to compel an account of the profits realized from the use of the property.

The principle of equity is that generally the decree operates *in personam*, and operates *in rem* only by virture of some statute conferring jurisdiction; and if the court has jurisdiction of the person of defendant the decree may run against him though it may affect property outside the jurisdiction of the court. In *Sutphen v. Fowler*, 9 Paige, 280, the court compelled the execution of a deed to land situated outside the jurisdiction of the court where the defendant was within its jurisdiction. In *Smith v. Davis*, 90 Cal. 25, 25 Am. St. Rep. 92, this court upheld the appointment, by the decree of a superior court, of a trustee in respect of lands situated in Washington territory and directing him to execute the trust. In this case numerous illustrations are given of the decrees of equity courts acting *in personam* and only collaterally *in rem*. In further illustration of the principle see *Smith v. Smith*, 88 Cal. 572; *Le Breton v. Superior Court*, 66 Cal. 27; *White v. Adler* (Cal. 1896), 42 Pac. Rep. 1070.)

The judgment should be reversed.

Britt, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed. Henshaw, J., Temple, J., McFarland, J.