[S. F. No. 3551. Department One.—April 17, 1905.]

P. A. CAMERON, Appellant, v. J. R. BURNHAM et al., Respondents.

MINING CLAIM—CONTRACT BETWEEN LESSEES CONSTRUED WITH LEASE—BREACH OF CONTRACT BY LESSEE — FORFEITURE. — An agreement between proposed lessees of a subterranean gravel mining claim for a series of years, providing for certain payments by them for development of the property, and providing for forfeiture of all rights for failure to make payments as agreed, is to be construed together with the lease of the mine to all of the parties to the agreement, as one contract, as against a lessee who has broken the contract, and wholly failed and refused to make any payments thereunder, and has forfeited all rights in the property by the terms of the contract.

ID.—EQUITABLE RELIEF REFUSED.—A court of equity will not countenance injustice, nor relieve a party who has refused to do equity; and the lessee who refused to comply with the conditions of the

contract cannot maintain an action in equity to enforce an interest in the mining property under the terms of the lease, or to compel the defendants to share with him the profits of their industry and expenditure of moneys to which he refused to contribute as agreed.

APPEAL from a judgment of the Superior Court of Alameda County.  F. B. Ogden, Judge.

The facts are stated in the opinion.

H. A. Powell, and W. A. Dow, for Appellant.

An estate for years under a lease of a mine, with the exclusive privilege of mining therein, is an estate or interest in the land.  (*Consolidated Coal Co.* v. *Peers,* 150 Ill. 344; *Watson* v. *O'Hern,* 6 Watts, 368; *Smith* v. *Cooley,* 65 Cal. 46; *Mack* v. *Shafer,* 135 Cal. 113; *Brown* v. *Beecher,* 120 Pa. St. 590; *Titusville etc. Works' Appeal,* 77 Pa. St. 103; *First Nat. Bank* v. *Dow,* 41 Hun, 13; *Hyatt* v. *Vincennes Nat. Bank,* 113 U. S. 408; *Duke* v. *Hague,* 107 Pa. St. 57; Washburn on Real Property, 5th ed., 21; Blanchard & Works on Mines, 32; Barringer & Adams on Mines, 75; Snyder on Mines, sec. 1164.)  Title in real property once vested cannot be devested by oral disclaimers.  (*Davis* v. *Perley,* 30 Cal. 636.)  Forfeiture cannot be used as a mode of transferring property.  (*Wiseman* v. *McNulty,* 25 Cal. 230.)  The plaintiff was entitled to an accounting either as a tenant in common or a mining partner.  (*Smith* v. *Fagan,* 17 Cal. 179; *Coward* v. *Clanton,* 122 Cal. 451; *Shirley* v. *Goodnough,* 15 Or. 642; Barringer & Adams on Mines, p. 752; Lindley on Mines, sec. 700.)

W. B. Kollmyer, and William R. Davis, for Respondents.

The plaintiff is not entitled to relief in equity, having willfully repudiated and broken his contract, in which time was made of the essence, and the value of the property having greatly changed through expenditures to which he refused to contribute.  (Pomeroy's Equity Jurisprudence, secs. 357, 404; *Rayfield* v. *Van Meter,* 120 Cal. 416; *Glock* v. *Howard etc. Co.,* 123 Cal. 9;[1] Lindley on Mines, sec. 859; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 593.)

GRAY, C.—This action is brought to obtain a decree that plaintiff is the owner of a one-ninth interest in a subterranean

[1] 69 Am. St. Rep. 17.

gold-bearing gravel channel upon a certain tract of land in Sacramento County and for an accounting of all dealings in relation to said mine by and on behalf of an alleged mining partnership in which plaintiff claims to be a member.

The judgment was for defendants, and the plaintiff appeals therefrom.

The plaintiff and six others who are made defendants herein entered into a written agreement on May 17, 1901, wherein the tract of land in question is described, and it is recited that the parties to said agreement are desirous of leasing the mining rights and privileges on said land from W. B. Plumb, the owner thereof. Six of the parties, including the plaintiff, agreed to and did subscribe five hundred dollars each, and a seventh party to the contract, named J. R. Burnham, subscribed fifteen hundred, making an entire fund of forty-five hundred dollars, "for the purpose of securing said lease and prospecting said land." It was agreed that "each subscriber shall own and be entitled to an interest in said lease and mining privilege in proportion as the amount he subscribes is to the whole amount subscribed, when the whole amount of said subscription shall have been paid up." It was also agreed that "said sums so subscribed shall be paid into the hands of said A. T. Eastland in payments of equal proportion to the sum subscribed at such time or times and in such sums as shall be designated and fixed by said A. T. Eastland. And if any subscriber shall fail or refuse or neglect to make such payments at the time so designated by said A. T. Eastland and the same shall remain unpaid for the period of ten (10) days after the date set for such payment, and after the same should have been paid, then, and in that case, such delinquent subscriber or subscribers immediately forfeit all interest and rights in said lease and mining privileges and shall forfeit all moneys that he or they shall have paid under this agreement."

On the day following the execution of the above agreement, May 18, 1901, said W. B. Plumb, one of the defendants herein, entered into an agreement with the plaintiff and other defendants for the purpose of carrying out the purposes of the first agreement. It was agreed on the part of Plumb that he "hereby grants to said parties of the second part the exclusive right to enter upon the lands hereinafter described, and to

prospect and mine the same for the term of six years from and after the 18th day of May, 1901." The right to use the land for agricultural and grazing purposes was reserved to the owner, Plumb. The second parties agreed to pay to the first party fifteen per cent "of the gross amount of all gold so extracted," or at their option in lieu of the above-named consideration they could within six months pay ten thousand dollars as the full consideration for said "exclusive right and privilege to mine as aforesaid."

It appears from the evidence and findings that soon after the execution of these instruments, and in that same month of May, the said Eastland designated and fixed the sum of one hundred dollars to be paid by plaintiff and each of the other parties interested with him on account of their several subscriptions. One of the subscribing parties, James Wing, it appears, had already paid the entire amount of his five-hundred-dollar subscription. The plaintiff and the other subscribing defendants, except Wing, were duly notified of the fixing of this hundred-dollar sum as due from each of them, and all of them paid up within the ten days given them, except the plaintiff. The plaintiff refused and neglected to pay anything, and "persistently and willfully declined and refused to participate in, or to have anything to do with the work, enterprise or undertaking referred to in said agreements." Time and again he declared that he was out of it and was glad of it; that defendants were "a bad lot"; that he had "not paid in," and was not going to pay anything or have anything at all to do with the matter. The court finds that "ever since the twenty-first day of May, 1901, the plaintiff has repudiated, disavowed, withdrawn from, deserted and abandoned said work, enterprise, undertaking, agreements and all the duties, obligations, options and benefits thereof." In the mean time the other parties to the agreement, recognizing that plaintiff was "out of it," proceeded to prospect the ground at an expense to them of much more than the original amounts subscribed, and finally, as appears, in about October, 1901, struck a rich mine, and have since worked the same with considerable profit. Plaintiff has done nothing at any time and contributed nothing toward the discovery, development, or working of this mine.

On the foregoing facts we are of opinion that plaintiff was

not entitled to the relief prayed for. The plaintiff is or was a party to both the contracts above referred to, and as they were both intended for the accomplishment of one purpose, so far as plaintiff is concerned, they should be construed together as one contract. The plaintiff, after having neglected and refused to perform any part of his agreement, after standing by for five months watching the other parties spending their money in search of this gold that no one knew existed, all the time declaring that he was "out of it" and would have nothing to do with it, doing what he could to discourage the enterprise, now seeks in this equitable action to compel the defendants to share with him the profits of their industry and expenditure of moneys. This he cannot do in a court of equity. He who asks equity must do equity. He who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed. (Civ. Code, sec. 1439.) Plaintiff failed and refused to pay any part of the amounts he agreed to pay, and thereby by the very terms of the contract forfeited any right that he may ever have had in the property in dispute. It makes no difference whether we call the agreement executed by Plumb a lease or a mere "mining privilege," and the statute of frauds has nothing to do with the case. Plaintiff could have no rights in equity and no right to be heard in a court of equity until he did the equitable thing by his associates and performed his part of the agreement. To give him an interest in this mine and the proceeds thereof now would be the grossest injustice to his co-contractors. A court of equity will not countenance such an injustice. On the most familiar principles of equity it is clear that the trial court sitting as a court of equity was fully warranted in denying the plaintiff all relief.

We advise that the judgment be affirmed.

Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Shaw, J., Angellotti, J., Van Dyke, J.

Hearing in Bank denied.