[Civ. No. 11325. Second Appellate District, Division One.—August 12, 1937.]

C. RICHARD MYERS, Appellant, v. METROPOLITAN TRUST COMPANY OF CALIFORNIA (a Corporation) et al., Respondents.

George W. Henderson for Appellant.

Roland G. Swaffield for Respondents.

THE COURT.—Demurrers to plaintiff's complaint in an action to recover damages for fraud having been sustained without leave to amend, he has appealed from the ensuing judgment that was entered against him, as well as from an order by which his motion to vacate the judgment and to permit him to file an amendment to the complaint was denied.

The charges in the complaint, which was filed July 11, 1936, are to the effect that, as a part of an alleged conspiracy to defraud plaintiff's assignors, who were investors in the mortgage certificates to which reference is hereinafter made, a "deed of trust agreement" was entered into, whereby defendant California Reserve Company undertook to deposit with Metropolitan Trust Company, as trustee or depositary, mortgages and deeds of trust, against which California Reserve Company proposed to and did issue and sell to the public certificates of undivided interests therein, the trust company to certify on each certificate that it had on deposit what were designated "owners" mortgages aggregating in principal an amount equal to the face value of all outstanding certificates, together with "guaranty" mortgages aggregating fifteen per cent of that amount. Each of the mortgages so deposited was to constitute either a first or a second lien on property of an appraised value not less than twenty-five per cent in excess of the combined liens thereon, was to be accompanied by a "legal opinion" as to its validity, a certificate or policy of title insurance, "owner's offset statement", appraisals by two qualified appraisers, and a statement by California Reserve Company that it had investigated the obligors and considered them a good risk. California Reserve Company might withdraw any mortgage from the trust upon substituting one of equal value, and was required to deposit a new mortgage in lieu of any upon which default continued for ninety days. No new certificates were to be issued unless the deposited mortgages aggregated the amounts hereinbefore mentioned, and no certificate was to be authenticated by the trust company if it had knowledge of any default or breach of the trust. It was then charged that pursuant to the conspiracy, during 1929, 1930 and 1931, California Reserve Company withdrew "good and valid" mortgages from the trust and substituted therefore worthless or inferior mortgages, executed by insolvent subsidiaries of California Reserve Company, resulting in the complete collapse of the enterprise; that no interest had been paid on the outstanding certificates since October 1, 1931.

The last fraudulent substitution is asserted to have taken place on November 25, 1931, over four years before the complaint was filed. In such circumstances, in order to evade the application of the statute of limitations to the cause of action, it was necessary for the plaintiff to plead facts

showing that "discovery of the facts constituting the fraud" occurred within three years prior to the commencement of the action. (Sec. 338, subd. 4, Code Civ. Proc.) The rule by which the sufficiency of a pleading in this regard shall be determined is found in the case of *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482, 486 [45 Pac. 809, 810], where, in part, it is said:

"It must appear that he did not discover the facts constituting the fraud until within three years prior to commencing the action. This is an element of the plaintiff's right of action, and must be affirmatively pleaded by him in order to authorize the court to entertain his complaint. 'Discovery' and 'knowledge' are not convertible terms, and whether there has been a 'discovery' of the facts 'constituting the fraud', within the meaning of the statute of limitations, is a question of law to be determined by the court from the facts pleaded. As in the case of any other legal conclusion, it is not sufficient to make a mere averment thereof, but the *facts* from which the conclusion follows must themselves be pleaded. It is not enough that the plaintiff merely avers that he was ignorant of the facts at the time of their occurrence, and has not been informed of them until within three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were done in secret or were kept concealed; and he must also show the times and the circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged; and, *as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on inquiry, which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts."* (Italics ours.)

The allegations of the complaint which it is claimed sufficiently comply with the foregoing requirements are that "it was also a part of said conspiracy, that the California Reserve Company should, and it did, represent and state to plaintiff, . . . by oral reports and statements, by reports and statements in writing . . . by the terms of said certificates, and by other means", that the business was prospering and that

the mortgages were in good standing and amply secured; that it was a part of said conspiracy that California Reserve Company should pay the interest due on said certificates, not solely from interest received on the deposited securities, but with funds obtained from other sources; that these representations were made to lull plaintiff's assignors into a feeling of security and prevent them from making an investigation; that the plaintiff and his assignors reposed trust and confidence in defendants; that "plaintiff did not discover, and he is informed and believes, and upon such information and belief alleges, that none of his assignors discovered any of the facts which lead to the discovery of the fraud alleged in this complaint until on or shortly after December 17, 1931; that plaintiff received, and he is informed and believes and upon such information and belief alleges, that each of his assignors received, on or shortly after December 17, 1931, a notification from the California Reserve Company and Metropolitan Trust Company of California, that California Reserve Company had breached the said 'Deed of Trust Agreement', and had relinquished and was divested of its rights in respect to the 'mortgages/trust deeds' and its powers under said 'Deed of Trust Agreement'.

"That, *thereafter*, for the purpose of ascertaining the necessity of, and reason for, the said notice of breach, the actual status and value of said 'mortgages/trust deeds', and of said 'certificates', *and for the purpose of determining whether or not the statements and representations heretofore alleged were true or false*, plaintiff and certain of his assignors caused a committee of owners and holders of said 'certificates' to be formed and organized."

Plaintiff further alleged, upon information and belief, that the investigation was hampered by false entries in the books of the defendants; that neither plaintiff nor his assignors had access to the books of the defendant corporations by reason of the fact that they were not stockholders therein; that the committee pursued its investigation with diligence, but, "by reason of the facts hereinbefore alleged, the said committee was unable to, and did not complete its investigation and report into the affairs of said corporations until July 11, 1934".

It is apparent that the lower court was correct in its conclusion that plaintiff had failed to commence his action in time. From what has been detailed of the complaint, it

appears not only that plaintiff and his assignors knew, on December 17, 1931, that California Reserve Company had violated the terms of the trust agreement, which meant that it had failed to maintain the "owners" and "guaranty" mortgages required by the agreement, but that they were repeatedly reminded of that fact by the total failure of the interest payments due quarterly after October 1, 1931. These circumstances must be held sufficient to put any prudent man, who cared at all for the safety of his investment, upon inquiry. The complaint reveals that in fact the investors were put upon inquiry, for it is alleged that *"thereafter"* they organized a committee to investigate and determine "whether or not the statements and representations heretofore alleged were true or false"; and it is not alleged that the formation of the committee was impelled by the knowledge of facts other than the fact of default in interest and breach of the agreement by California Reserve Company.

"Where a party has knowledge of facts of a character which would reasonably put him upon inquiry, and such inquiry, if pursued, would have led to a discovery of the fraud or other ground for rescission, he will be charged with having discovered the fraud or other ground *as of the time he should have discovered it if he had with reasonable diligence pursued the inquiry when he should have done so."* (Italics ours.) (*Bancroft* v. *Woodward,* 183 Cal. 99, 108 [190 Pac. 445]; *Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698, 704 [16 Pac. (2d) 268].)

Since plaintiff and his assignors had the "means of knowledge", it was incumbent upon plaintiff to allege facts to show that in the exercise of reasonable diligence they could not have discovered the facts constituting the fraud at an earlier date. As was said in *Consolidated R. & P. Co.* v. *Scarborough, supra,* at page 704:

"For all that appears on the face of the complaint, the facts leading to the inquiry and investigation which uncovered the fraud may have been available to the present board of directors for more than three years prior to the institution of this action. In other words, if, as alleged, an investigation of the affairs of the corporation in 1928 uncovered the fraud complained of, it is entirely conceivable that a similar investigation undertaken prior to the running of the statute might have likewise disclosed such fraud. It was

incumbent upon plaintiff to allege the circumstances of the discovery in order that the trial court might determine whether or not the information prompting and leading to the investigation was available to plaintiff for more than three years prior to the institution of this action. The complaint here utterly fails to allege any facts showing why such investigation was not made at an earlier date and, if sooner made, why it would not have disclosed the fraud prior to the running of the period of limitations. True, the complaint alleges the secretive character of the fraud and conspiracy but if, as alleged, an investigation disclosed the same in 1928 it was for the plaintiff to show why it could not have been discovered earlier.''

The complaint in the instant case fails to disclose when the investors' committee began the investigation which ended on July 11, 1934. For aught that appears, it may not have started until that year. The statement that the investigation was pursued with diligence is a mere conclusion. It is alleged that the books of defendants ''did not reflect accurately and truly the facts purportedly recorded therein'' and that plaintiff and his assignors did not have the ''right of access'' thereto; but the information as to the fact of the substitutions was, of necessity, largely a matter of public record in the office of the county recorder, and there is no allegation that the committee demanded and was refused access to the books of the defendant corporations or that an examination thereof was refused, or would have been refused if sought as an incident to an appropriate civil action.

Appellant's second point is that the court abused its discretion in sustaining the demurrer without leave to amend, and that it likewise erred in denying his motion to vacate the judgment and for permission to file a proposed amendment to the complaint. It might well be held that appellant's latter contention is without merit for the reason that his motion was not made under section 473 of the Code of Civil Procedure, nor was any showing made of mistake, inadvertence, surprise or excusable neglect, as required by that section, and that in the absence thereof the court was without authority to vacate its judgment. (*Keller* v. *Keller*, 132 Cal. App. 343 [22 Pac. (2d) 798].) However, an examination of the proposed amendment to the complaint which plaintiff filed with his motion discloses that not only did the amendment fail to cure the defects in the original complaint,

but it affirmatively appears, in our opinion, from the complaint and the proposed amendment, that plaintiff's case on this point has been stated as strongly as it can be stated.

The proposed amendment would add to the complaint a copy of a letter received from California Reserve Company on December 16, 1931, a copy of the ''notification'' received from defendant Metropolitan Trust Company on December 18, 1931, and allegations to the effect that ''said communications were the first notices that any of plaintiff's assignors had, that there had been any default or breach . . . that neither of said communications indicated that any of the fraud complained of in this complaint existed . . . the facts concerning said fraud . . . were intentionally omitted . . . and said communications did conceal said facts and said fraud . . . and lulled the plaintiff and each of his assignors into a sense of security . . . ''; that on January 15, 1932, Metropolitan Trust Company filed an action to procure an interpretation of the trust agreement and thereafter resigned as such trustee, and certain individuals were appointed in its place; that ''several civil actions of various natures were filed respecting said trust; but that none of said civil actions or proceedings gave to plaintiff, and as plaintiff is informed and believes and upon such information and belief alleges that none of said actions or proceedings gave to any of plaintiff's assignors, any knowledge or notice of the facts constituting the fraud . . . but that . . . various bits of information obtained by plaintiff, and plaintiff's assignors, tended to and did lead them to believe that no fraud as herein alleged existed . . . ''; that an ''example of such information'' was a letter to the investors dated September 29, 1932, in which the new trustees stated that they thought the investors would eventually receive ''in excess of 100% of their investment''; that the 1932 grand jury did not make any investigation, or if it did it kept its findings secret; that the 1934 grand jury made an investigation and returned some indictments on July 6, 1934; that about February, 1932, California Reserve Company was adjudged bankrupt and an auditor was appointed to make an audit of the books, which audit, because it was not completed due to lack of funds, failed to show the facts constituting the fraud; *that a committee of investors was formed in March, 1934;* that in June, 1934, this committee employed the auditor to complete his audit, and he thereupon, ''quite accidentally, discovered and uncovered . . . a few of

the facts constituting the fraud . . . ''; that the investigation was thereupon pursued with diligence and completed on July 11, 1934.

It is plain that the allegations of the amendment do not strengthen plaintiff's case, but to the contrary, make it reasonably certain that he could not state a cause of action so as to avoid the application of the statute of limitations in any event, and for that reason alone the court was justified in denying the motion to vacate the judgment and permit the filing of the amendment. The facts set out in the amendment contradict the conclusion that plaintiff's assignors made a diligent investigation, for they show that if the audit, which required less than two months to complete, had been commenced and continued with reasonable diligence at the outset, it would have uncovered the facts constituting the fraud as early as 1932. No reason is given why the committee (which according to the original complaint was to determine the truth or falsity of the representations complained of) was not formed until 1934, nor are the facts which impelled the investors to organize it at that late date set forth. The asserted further concealment of the facts by the letter of September 29, 1932, from the new trustees, who were not named as defendants, does not excuse the failure of plaintiff's assignors, who for almost a year had been chargeable with knowledge of facts sufficient to put them upon inquiry and who had the means of pursuing that inquiry, to conduct a diligent investigation.

The judgment and the order appealed from are affirmed.