[Civ. No. 14560. Second Dist., Div. Two. Feb. 19, 1945.]

H. LAVERNE TWINING, Respondent, v. W. V. THOMPSON et al., Appellants.

Houser & Houser and Bruce Mason for Appellants.

H. B. Pool for Respondent.

MOORE, P. J.—On June 27, 1941, plaintiff filed this action to recover his share of the royalties which had been paid out

of the proceeds from the sales of the petroleum products recovered from the two lots of appellants during the preceding six years. The natural codefendants of appellants had acquired from the latter participating interests in such production, and by reason thereof had collected various percentages of the royalties. The defendant Western Trust and Savings Bank was designated as the depositary of appellants for the purpose of distributing amongst all of the interested participants the royalties to be paid upon the production from appellants' lots.

Having pleaded the two and three-year statutes of limitation, appellants now urge (1) that there was no proof of an express contract and (2) that therefore recovery is barred by the two-year statute. (Code Civ. Proc., § 339, subd. 1.) Although they denied (3) that their transactions were tainted with fraud they now contend (4) that prior to suit no demand was made for the royalties withheld, and (5) that if the action is not barred by the three-year statute no sufficient excuse for failure to file suit within the statutory period was proved. (Code Civ. Proc., § 338, subd. 4.) The bare substance of the findings, which are abundantly supported, will serve largely to confute these contentions.

On June 8, 1920, plaintiff was the owner of lot 22, Block C of Garfield Street Addition to the city of Huntington Beach.* At the same time Mrs. Arnett and Mr. Thompson and his wife owned respectively lots 29 and 30 of Block B, same tract. Plaintiff and defendants agreed at that time to execute a community lease for the development of oil and petroleum products on the three lots and to divide the royalties among themselves in proportion to the acreage leased by them. Pursuant to such agreement on the same day they executed a community lease to the Columbia Leasing and Development Co., hereinafter referred to as Columbia, by the terms of which they were to receive and share one-sixth of the proceeds to be received by the lessee from the sale of all petroleum products recovered from the three parcels, to be divided as follows: 50.1758 per cent to the owners of lot 22; 29.8242 per cent to the owners of lots 29 and 30. This lease was abandoned some eight years later and the several titles were re-

---

*Inasmuch as Mrs. Twining deceased prior to the filing of this action, mention of her in the statement of each fact that occurred during her lifetime and in which she participated will add nothing of value to the discussion.

stored to the lessors. But on March 15, 1929, plaintiff made a new oil lease on lot 22 and provided thereby for the payment of one-sixth of the production as royalty, to be divided among himself and appellants as provided in their original agreement and in the community lease. Following the month of September, 1931, oil, gas and gasoline were produced from lot 22 and the royalties were actually divided as stipulated in the lease. Each of the parties thereafter at all times received his share of the royalties paid from the production of lot 22.

Prior to March 15, 1935, the defendants Bryce and associates acquired interests in lot 30. On that day they joined the Thompsons in executing an oil and gas lease to Lee Doran and others on the east portion of lot 30 which by a subsequent amendment was increased to the east one-half. Since the east half only is involved, hereafter all reference to lot 30 will refer to the east half unless the west half is specified. In making such lease Thompson observed his original agreement with plaintiff with respect to the division of the royalties from lot 30 by requiring 50.1759 per cent thereof to be paid to plaintiff as owner of lot 22; 18.6339 per cent to the owner of the west half of lot 30; 14.9171 per cent to W. V. Thompson as owner of the east half of lot 30; and 16.2732 per cent to Mary Arnett. By the terms of the lease on lot 30 as amended the lessee agreed to pay a royalty of one-sixth of the value of all petroleum substances recovered from the property. It was also provided that the shares due the owner of the west half of lot 30 and plaintiff should be deposited with defendant Western Bank, but that the shares going to Thompson and to Mrs. Arnett were to be mailed directly to them by the lessee. The west half of lot 30 was never leased for the development of oil and no well was ever drilled thereon. On the first of October, 1935, the Thompsons conveyed about 17 per cent of the production of lot 30 to defendants Bryce et al., each of whom thereafter received his share.

April 15, 1935, Mrs. Arnett executed an oil and gas lease on lot 29 to Duke-Gates Petroleum Co. for one-sixth royalty. By her lease Mrs. Arnett directed the division and payment of the royalty in the exact language employed by Thompson in his lease to Doran, appellants to receive their shares directly from the lessee.

Since October, 1935, and March, 1936, respectively, while production had been continuous from lots 29 and 30, the total

royalty was deposited with Western Bank. During the period of such deposits appellants had full and complete knowledge of plaintiff's right to receive 50.1758 per cent thereof. Between October, 1935, and March, 1941, out of the entire royalty from the production of lots 29 and 30 received by the Western Bank it paid the entire amount thereof to defendants, including plaintiff's share in the amount of $12,655.80. This money was paid by the bank through mistake in the belief that plaintiff's share had been deducted prior to the deposit of the royalties with the bank and that the money which it received was to be distributed to the defendants only.

The court awarded judgment in favor of plaintiff and against the several defendants for the recovery from each of the portions of plaintiff's royalty deposited by the lessees with the bank, that institution having paid such portions to the defendants. Appeal was taken only by Mr. and Mrs. Thompson and Mrs. Arnett.

### CONTRACTUAL RELATIONS BETWEEN THE PARTIES

Appellants contend that no contractual relation existed between plaintiff and appellants because of the abandonment of the properties by Columbia and its quitclaim of the leases on the three lots. In this appellants misconceive the significance of the transactions of the parties prior to the execution of the existing leases on lots 29 and 30. Thompson testified that plaintiff set up a specified way according to which appellants were to receive their royalties and that he copied such provision into his own lease; that the idea in starting a community lease with Columbia in June, 1920, was so "one person could not fall out" and get all the royalty; that thereby appellants were to extend the community lease. Plaintiff testified that the provision in his lease to McKeon providing for the division of royalties from lot 22 with the owners of lots 29 and 30 is exactly in accordance with the agreements between himself and appellants; that he had assumed that if Thompson received royalties from lot 22 plaintiff should receive royalties from 29 and 30. Such assumption by both parties and all of their transactions including appellants' acceptance of royalties from lot 22 together with their original contract and the Columbia lease constituted a definite agreement for the division among them of royalties from the production of lots 29 and 30. This understanding was confirmed by two other incidents of which the proof is in writing, viz., (1) a

written notice served upon appellants in September, 1928, in which plaintiff advised appellants of his cancellation of the lease executed June 8, 1920, to Columbia, in which notice plaintiff advised them that in the event of his executing a new lease they should receive the same percentages of royalty as they were entitled to under the Columbia lease; (2) after production had been developed on lot 22, under plaintiff's new lease he made provision·for all owners of lots 29 and 30 to share in the royalty from his lot according to their respective percentages of interest in those lots. Such royalty was accepted by appellants.

The fact that the plaintiff and appellants did not sign the same document does not spell the nonexistence of the contract which grew up between them. ■ When an oral agreement has been executed or when a number of writings dovetail so as to show a meeting of the minds for the accomplishment of the same object, the contract is as well established as though it had been signed on one writing by all parties and executed with conventional formalities. (*Cameron* v. *Burnham*, 146 Cal. 580 [80 P. 929]; *Gilliam* v. *Brown*, 126 Cal. 160 [58 P. 466]; *Elbert* v. *Los Angeles Gas Co.*, 97 Cal. 244 [32 P. 9]; *Patterson* v. *Donner*, 48 Cal. 369.) ■ A written contract fully executed having been thus established, it readily appears that the two-year statute of limitation is not applicable.

### FRAUD OF APPELLANTS

■ Assignment is made that there was neither pleading nor proof of fraud on the part of appellants. The allegation that during six years appellants received and retained the royalties of plaintiff knowing that they belonged to him and the proof in support thereof declares all that is essential to a compliance with the rule as to pleading and proof of fraud. Plaintiff had no knowledge of appellants' leases, the drilling of the wells, or the production or the payment of the royalties until April, 1941, within sixty days prior to the commencement of this action. Such allegation comprehends not only a fraudulent intent but the consummation of a fraud. As partners of plaintiff appellants were obligated to disclose to plaintiff the payment of the moneys to them. The suppression of such fact was a fraud upon plaintiff (Civ. Code, § 1522), and the allegation thereof is sufficient.

TOLLING THE RUNNING OF THE STATUTE

■ An action based upon fraud or mistake is not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake or until with reasonable diligence he might have made the discovery. (Code Civ. Proc., § 338, subd. 4; *Lightner Min. Co.* v. *Lane,* 161 Cal. 689, 697 [120 P. 771, Ann.Cas. 1913C 1093].) In contending that there is neither sufficient pleading nor proof to toll the running of the statute appellants do not correctly evaluate the proof of the reasonableness of plaintiff's insistence that he could not by the exercise of ordinary care have learned of defendants' possession of his money. Such facts were pleaded and proved.

Plaintiff had been a teacher in California schools from 1888 till 1935. At the time of the trial he was past eighty years of age; had been seriously ill since 1933. During the seven years from 1928 to 1935 lots 29 and 30 were not leased. During those years there was neither an oil well nor other improvement upon either lot. Thereafter there was no improvement on either lot except the oil wells. The place of plaintiff's residence and business was about 50 miles from the properties. Nothing occurred between 1935 and April, 1941, to direct plaintiff's attention to the fact of petroleum production from either lot. Besides the aforementioned infirmities of plaintiff it is established that during the six years preceding April, 1941, he was not able to journey over 60 or 70 miles. He had not driven an automobile after 1936. He had not visited his property after 1930. His first knowledge of the existence of the wells on lots 29 and 30 was occasioned by a visit to his property in April, 1941. Prior to that time he had received no information of the leases made by appellants covering their two lots. Having discovered on that April day the operation of appellants' producing wells he reported the fact to an income tax expert then in his employ. The investigation made by the expert disclosed all of the facts of the leases, of the drilling of the wells, and of the payment of the royalties to the bank from the commencement of the production until plaintiff's discovery. While it is true that he regularly received royalty checks from production on his own lot, yet nothing in connection therewith was reasonably calculated to arouse a suspicion that his share from appellants' production

was being paid to defendants or that the wells had been drilled. ▊ Where there is no legal duty of a plaintiff to investigate and no such circumstance is present as would put a reasonably prudent man upon inquiry, the mere fact that a means of acquiring knowledge is available to plaintiff and he has not made use of such means does not debar plaintiff from recovering after he makes the discovery. (*Tarke* v. *Bingham*, 123 Cal. 163, 166 [55 P. 759].) Innocent parties do not carry the burden of inquiry. (*Hart* v. *Walton*, 9 Cal.App. 502, 509 [99 P. 719].)

Appellants urge as proof of plaintiff's knowledge of their leases the testimony of the witness Porter that in 1935 he had told plaintiff of the oil situation at Huntington Beach. But such conversation was denied by plaintiff. Moreover, Thompson himself testified that he had never informed plaintiff of the production from lots 29 and 30. During the entire period from the commencement of the drilling on those lots plaintiff was subject to sickness and unfit for physicial exertion. With both impaired vision and hearing, with diabetes, kidney ailment and toxemia, his exertions were confined practically to banking his money and paying his bills. He owned no automobile after 1937 and was thenceforth incapacitated for driving one. While he financed a metallurgical laboratory he employed another to do the work because of his infirmities.

▊ The evidence as well as the findings supply ample justification for deciding that plaintiff was excusable for his failure to institute his action within three years following the retention of his moneys by appellants. There is no fact or circumstance in connection with the execution of the leases, the drilling of the wells and the deposit of the money that would constitute the equivalent of knowledge of the existence of such facts. It is not to be denied, as announced in the authorities cited by appellants, that a pleading to excuse the failure to file a fraud action within the statutory period must set forth (1) when the fraud or mistake was discovered, (2) why it was not discovered sooner, and (3) the circumstances under which it was discovered. (*Lady Washington C. Co.* v. *Wood,* 113 Cal. 482 [45 P. 809]; *Phelps* v. *Grady,* 168 Cal. 73 [141 P. 926]; *Consolidated Reservoir & Power Co.* v. *Scarborough,* 216 Cal. 698 [16 P.2d 268]; *Myers* v. *Metropolitan Trust Co.,* 22 Cal.App.2d 284 [70 P.2d 992]; *Johnson* v. *Ehrgott,* 1 Cal.2d 136 [34 P.2d

144]; *Watson* v. *Santa Carmelita etc. Co.*, 58 Cal.App.2d 709 [137 P.2d 757].) However, the complaint here complied with those requirements. The cited decisions are not pertinent. In most of them the complaint omitted to declare the three essentials to excuse delay in commencement of the action. In *Phelps* v. *Grady* the fraud alleged was the statement of an opinion as to the value in inducing the purchase of real property which lay open to inspection for seven years after its acquisition.

The courts do not lightly seize upon small circumstances in order to deny an award to an innocent victim of a fraud upon the ground that he did not discover the fraud sooner. (*Simmons* v. *Briggs,* 69 Cal. 447 [231 P. 604]; *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 P. 243].) In order to warrant a denial of recovery to one who has been defrauded the circumstances must be such that inquiry became a positive duty and failure to make the inquiry was an omission of a duty. (*Nichols* v. *Moore,* 181 Cal. 131 [183 P. 531].) In the Nichols case the complaint was sufficient although it merely alleged discovery of the fraud through an investigation made by plaintiff's brother. In an early case for the sale of goods consigned to the defendant he neglected to report the sale. Knowledge thereof by the plaintiffs was not acquired until shortly before suit and subseqent to the expiration of the statutory period. To have held that the statute ran against the plaintiffs under such circumstances would have been to permit defendant "to take advantage of his own wrong; and to sustain a defence which, in conscience, he ought not to be permitted to avail himself of." (*Kane* v. *Cook,* 8 Cal. 449, 458.) In all cases a fraudulent concealment of a fact "upon the existence of which the cause of action accrues" is a good answer to the plea of the statute of limitations. The statute of limitations was intended as a shield against stale claims, but a wrongdoer may not use it to perpetrate a fraud upon otherwise diligent suitors. (*Pashley* v. *Pacific Electric Co.,* 25 Cal.2d 226 [153 P.2d 325].) Technical rules as to the time when an action accrues apply only when a case is free from fraud on the part of defendant. (*Ibid.*)

### DEMAND NOT NECESSARY

Appellants contend that no cause of action was alleged or proved by reason of the failure of plaintiff to make de-

mand upon appellants for his share of the royalties which they collected and retained. Under the circumstances no demand was necessary. Appellants knew they had wrongfully kept the moneys of plaintiff. The court was not obliged to believe Thompson's testimony that he was ignorant of receiving more than his share. He had provided in both his own and the Arnett leases for their shares of the royalties "to be mailed by the purchaser of the oil" directly to them, while the payment of plaintiff's share should be deposited in the bank. Despite such provision he and Mrs. Arnett knowingly received more than twice the amounts they would have received had plaintiff's share been paid to him. They could not have continued in a state of innocence for six years, receiving every month their checks with a "statement" of the total production of each lot, the price and the amount payable for the one-sixth. Thompson testified that he understood the facts contained in such monthly statements. Because of their conscious knowledge of having received, and of holding, the funds of plaintiff, demand upon them was unnecessary. The law implied their promises to pay them. (*Firpo* v. *Pacific Mutual Life Insurance Co.,* 80 Cal.App. 122, 123 [251 P. 657]; *Pike* v. *Zadig,* 171 Cal. 273 [152 P. 923].) The Firpo case further holds that the common count for moneys had and received will lie to recover money obtained by fraud or by mistake of fact.

The cases cited by appellants (*Dunham* v. *McDonald,* 34 Cal.App. 744 [168 P. 1063]; *Bledsoe* v. *Stuckey,* 47 Cal.App. 95 [190 P. 217]; *Mitchell* v. *California-Pacific Title Insurance Co.,* 79 Cal.App. 45 [248 P. 1035]) arose out of transactions wherein the party charged with possession of plaintiff's money had no knowledge of his wrongful detention thereof; for that reason demands were necessary. In the article quoted by appellants from the 15th California Law Review, page 64, it is said: "When demand is made upon defendant, or *when he learns* of facts which inform him of the mistake . . . the law imposes the obligation of restitution." In both the Mitchell and Bledsoe cases the moneys had been paid by mutual mistake, rendering demand in each case a prerequisite to the maintenance of the action. In the instant case there is no showing of innocence on the part of appellants. Thompson was the son-in-law of the aged Mrs. Arnett and at all times acted as her general agent in all matters relating to her lot from the time of the first contract.

##### APPELLANTS NOT ENTITLED TO REVISION OF THE CONTRACT

Finally, appellants contend that the contract for the division of the royalties should be reformed. They contend that by mutual mistake the areas of lots 22, 29 and 30 were miscalculated as a result of which plaintiff's stipulated percentage of the royalties to be earned was 50.1758 per cent instead of 45.0559 per cent, which by a correct computation was the extent of participation to which plaintiff was entitled. In their cross-complaint appellants allege that the "figures were in error in that one-half of the adjoining streets was excluded in computing the area of each lot." There are two answers to this assignment. (1) By their contract they provided that each party was to share in the royalties according to the acreage leased. Thompson's lease included only one-half of lot 30. This made the combined area leased by appellants more than 8,000 square feet less than the area of lot 22. (2) The lease on lot 22 had been executed in 1929. Plaintiff had collected his share of the royalties from his own lot since September, 1931. Hence, an action to revise the contract was barred by the three-year statute and no excuse for failing to discover the mistake within the statutory period was pleaded, nor was demand for revision alleged.

Judgment affirmed.

Wood (W. J.), J., and McComb, J., concurred.