Argued September 23; affirmed November 10, 1942

# BERGER *v.* LOOMIS ET AL.

(131 P. (2d) 211)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*Clifford G. Schneider*, of Portland, for appellant.

*Paul R. Harris*, of Portland (Leland Shaw and C. J. Stocklen, both of Portland, on the brief), for respondent.

BAILEY, J. This suit was instituted by Ella N. Berger against Hazel Neen Loomis and that defendant's two children, also Skulason Finance Company, an Oregon corporation, Bardi G. Skulason and others, to have set aside and declared fraudulent and void as to plaintiff the conveyance of an undivided one-half interest in real property in Illinois to Skulason Finance Company, and to obtain other relief. The decree declared such conveyance fraudulent as to plaintiff and ordered that the defendants convey all their interest in and to the real property in question to a receiver to be appointed by the court, and that the receiver so appointed sell such property and apply the proceeds therefrom in satisfaction of the plaintiff's judgment. The defendants, except John Doe, have appealed, and the plaintiff has filed a cross-appeal.

The judgment in question was recovered September 15, 1934, by Robert Berger, now deceased, in the circuit court for Multnomah county, Oregon, against Hazel Neen Loomis in an amount in excess of $7,000. Thereafter, upon the death of Robert Berger, the plaintiff herein became the owner of the judgment. Up to and including March 4, 1937, when the latest payment thereon was made, there had been paid on the judgment against Mrs. Loomis a total slightly in excess of $2,900. Thereafter, on October 27, 1939, execution on the judgment was returned *nulla bona*. At the time of entering the decree in the case at bar the trial court found that there remained due on the judgment as principal and interest a sum in excess of $8,000.

Some years prior to the entry of the judgment, Mrs. Loomis and her two sisters acquired title from their father to 320 acres of land in Illinois. The value of the entire 320 acres at the time of the trial herein was estimated at $25,000 to $40,000. One of the sisters, Miss Pearl Johnson, died in Oregon February 28, 1938, leaving a purported will devising her interest in the Illinois real property to the two children of Mrs. Loomis. On March 8, 1938, a contest of the will of Pearl Johnson was initiated, which resulted in a decree setting aside the will. That decree was affirmed by this court and the mandate in the cause was remitted to the circuit court July 22, 1939. When the will of Miss Johnson was set aside by the court, Mrs. Loomis as heir of her deceased sister became the owner of half of Miss Johnson's interest, or an undivided one-sixth, in the Illinois farm land.

On April 12, 1938, five weeks after the institution of the will contest, Mrs. Loomis conveyed to her two children the undivided one-third interest in the Illinois land that she had received from her father. Within less than a month after the mandate of the supreme court in the will contest was sent to the circuit court, Mrs. Loomis and her children on August 15, 1939, conveyed to an office associate of the defendant Skulason their interests, aggregating an undivided one-half, in the Illinois land. Later, during the same month, after the incorporation and organization of the defendant Skulason Finance Company, the associate of Mr. Skulason transferred to that corporation the undivided one-half interest so received by him. No consideration was paid by the grantee in any of these conveyances.

The defendant corporation was capitalized at $5,000. With the exception of two qualifying shares,

all its stock was issued to the defendant Skulason, who had caused to be conveyed through a trustee, in payment for such shares of stock, an undivided one-third interest owned by him in real property located in Portland, Oregon, which interest had a value in excess of $5,000.

Upon the transfer of the Illinois real property to the defendant corporation, the defendant Skulason started negotiations to obtain a loan of $5,000 on that land as security. The directors of the defendant corporation, according to its minutes, on September 18, 1939, authorized the mortgaging of the Illinois land. A further resolution to like effect was adopted on September 25, 1939. The minutes of the corporation of October 20, 1939, state that the conveyance to the corporation by Mrs. Loomis and her children was intended as security for attorney's fees of $2,000 owing to Mr. Skulason, for the contingent liability of Mrs. Loomis, of $1,000 or more on the bond that she had furnished as executrix of the purported will of Pearl Johnson, and any liability of Mrs. Loomis on the appeal bond in the will contest. Mr. Skulason testified that he considered himself personally responsible to the company that acted as Mrs. Loomis's surety for any liability incurred by it in the issuance of the two bonds mentioned.

The mortgage on the Illinois farm was executed by the defendant corporation on November 6, 1939, and recited that it was given to secure the payment of $5,000 evidenced by note or notes to that amount. The corporation on that date executed two notes of $2,500 each, payable to the mortgagee. The mortgagee, however, advanced only $2,500 at that time, for the reason that the Pearl Johnson estate had not then been pro-

bated in Illinois. Of that amount the corporation was paid $2,186, and the balance was used to pay fees and expenses connected with obtaining the loan.

After the institution of this suit and upon the application of the plaintiff an order was entered requiring the defendants to appear and show cause, if any existed, why an injunction should not be issued restraining them "from transferring, mortgaging or incumbering in any manner" the undivided one-half interest in the Illinois real property. Upon a hearing, the court, as stated in its order dated June 5, 1940, on the assurance of Bardi G. Skulason, attorney for the defendants and president of the defendant corporation, that the answering defendants would not "until the final determination of this cause, in any manner transfer, mortgage, incumber or alienate further said property," denied the plaintiff's motion for an injunction.

Thereafter the probate of the estate of Pearl Johnson in Illinois was completed. On or about April 21, 1941, the mortgagee advanced to the defendant corporation an additional sum of $2,000, evidenced by a new note executed by the corporation in that amount, apparently in lieu of one of the two original notes for $2,500 each.

Mr. Skulason had acted as attorney for Mr. Loomis for some eight or ten years prior to the trial of this cause in the circuit court. Beginning on April 4, 1938, the rent for Mrs. Loomis's interest in the Illinois farm had been paid to him and deposited in his name. The money received on the mortgage also was deposited in his name. From the funds so received by him he advanced money from time to time to Mrs. Loomis and her two children, and in addition paid some of her indebtedness. For the moneys advanced by him over

and above what he received on her account, Skulason charged Mrs. Loomis interest at the rate of five per cent. On the date that the motion for an injunction was denied there was owing by Mrs. Loomis to Skulason a total of $637.78.

The reason for the transfer of the Illinois property to the defendant corporation was stated by Mr. Skulason as follows: After this court had held the Pearl Johnson will invalid, Mrs. Loomis found herself financially embarrassed. She was liable both on the bond given by her as executrix and on the appeal bond. Her home had been sold on mortgage foreclosure and the time to redeem had either expired or was about to expire. Both her children had been maintained in Reed college by Pearl Johnson and upon Miss Johnson's death the Loomis family had no means to continue the children's education. Mrs. Loomis as the heir of Pearl Johnson inherited an undivided one-half interest in seven acres of land at Multnomah, Oregon, which interest was subject to two judgments against Mrs. Loomis. It was on Mr. Skulason's suggestion that the property in Illinois was conveyed to the defendant corporation, in order to secure the liability of Mrs. Loomis on the two bonds, to secure the payment of fees to Skulason, to obtain funds to redeem the property of Mrs. Loomis theretofore sold on foreclosure and to provide for the sustenance of Mrs. Loomis and her children.

The residence property that had been sold on foreclosure was thereupon purchased in the name of Mrs. Loomis's son, and a new mortgage thereon was given by him in the sum of $2,200 for part of the purchase price, the balance of which price was derived from proceeds of the mortgage on the Illinois property.

After the institution of this suit negotiations were carried on by Mr. Skulason and the attorneys for the plaintiff, looking to a compromise settlement of the judgment which the plaintiff had against Mrs. Loomis. Matters were progressing satisfactorily until it was discovered by Mr. Skulason that the statute of limitations of Illinois had, on September 15, 1939, become a bar to the prosecution of any action in that state by the plaintiff on her judgment.

■■ This proceeding is in the nature of a creditor's suit to uncover assets of the debtor and to have the same applied in satisfaction of the plaintiff's judgment. Were the land in question situate in Oregon, there could be no doubt as to the power of a court of equity in this state to grant the relief sought. The complaint alleges and the defendants admit that execution had been issued on the plaintiff's judgment and returned unsatisfied. This is a sufficient showing of the defendant Loomis's insolvency on which to base a creditor's suit: *Orr v. Bauer*, 156 Or. 409, 67 P. (2d) 770, and authorities therein cited. The right of a creditor to maintain a suit in equity to uncover assets fraudulently concealed by the judgment debtor has not been superseded by the garnishment and attachment laws of this state; nor has such remedy been taken away by the statutory provision for supplementary proceedings: *Sabin v. Anderson*, 31 Or. 487, 49 P. 870; *Matlock v. Babb*, 31 Or. 516, 49 P. 873.

■ That the purpose of conveying the Illinois real property to the defendant corporation was to place the assets of Mrs. Loomis beyond the reach of her creditors, the evidence leaves no doubt. Although the defendant Bardi G. Skulason testified that the conveyance was intended only as security for attorney's

fees due him and to cover the contingent liability of Mrs. Loomis for which he felt responsible, nevertheless it is clear from the evidence that one of the purposes of the conveyance was to make the property of Mrs. Loomis unavailable to her creditors. Mrs. Loomis and her children received, either directly or otherwise, at least three-fourths of the proceeds of the mortgage. Had the principal purpose of Mrs. Loomis been to obtain a loan on the security of the Illinois real property, the mortgage could have been executed by her as owner of the property, and enough of the proceeds could have been paid to Mr. Skulason to satisfy his claim against her and indemnify him for whatever liability she may have caused him to assume. In executing the mortgage the defendant corporation held itself out as the owner of the property, not as the mortgagee. And the corporation, the evidence makes clear, was but the *alter ego* of Mr. Skulason.

■ Equity will, when necessary to make a creditor's suit effectual, appoint a receiver to take charge of the debtor's property: 14 Am. Jur., Creditors' Bills, §§ 150 and 151, page 741; 21 C. J. S., Creditors' Suits, § 63, page 1106.

In the instant case, the particular asset of the defendant Loomis that is sought to be made available to the satisfaction of the plaintiff's judgment is real property situated in Illinois. At the time this suit was instituted the plaintiff was barred by the statute of limitations of Illinois from maintaining in that state any action on her judgment. Although the defendant Loomis had been before the court on supplementary proceedings, the plaintiff did not discover, until after the will contest was instituted, that Mrs. Loomis owned or had owned the Illinois realty. The record does

not disclose the date on which that discovery was made, and it might not have been until after Mrs. Loomis conveyed that realty to her children. The undivided one-sixth interest in the Illinois land that Mrs. Loomis inherited from her deceased sister, Pearl Johnson, was transferred by her prior to the probate of Pearl Johnson's estate in Illinois.

Had the plaintiff attempted to bring action in Illinois on her Oregon judgment prior to the running of the Illinois statute of limitations, she could not have obtained personal service of summons on Mrs. Loomis in Illinois, inasmuch as Mrs. Loomis was a resident of, and remained within, the state of Oregon.

■ It is not necessary to decide at this time whether the plaintiff, after discovering Mrs. Loomis's ownership of property in Illinois and after the conveyance of that property by Mrs. Loomis to her children, could have satisfied her judgment by bringing action on it in the state of Illinois and attaching the interest that Mrs. Loomis may have had in that property. Such a remedy would not have been plain, adequate and complete: *Sabin v. Anderson*, supra. As far as the deed records of Illinois are concerned, such records would not have shown that Mrs. Loomis had any interest in any real property. Even if it be assumed that the plaintiff did learn of Mrs. Loomis's ownership of property in Illinois after the initiation of the will contest and before Mrs. Loomis conveyed her undivided one-third interest to her children, it can not be said that the plaintiff is chargeable with laches in not having instituted some kind of proceeding within that short period of time.

■ As to the undivided one-sixth interest in Illinois realty that Mrs. Loomis inherited from her sister, Mrs.

Loomis's rights therein were not determined until this court rendered a decision in the will contest; and immediately thereafter Mrs. Loomis divested herself of title to that interest. In view of Mrs. Loomis's course of action, the defendants are in no position to assert that the plaintiff should have resorted to proceedings in the state of Illinois to subject Mrs. Loomis's property in that state to the satisfaction of her judgment. When the instant proceeding was instituted, the only remedy available to the plaintiff was a suit in equity such as this.

The court decreed in effect that the conveyance of the Illinois real property to the defendant corporation was made in fraud of creditors of the defendant Loomis, particularly the plaintiff, and held that the equity of Mrs. Loomis in that property would inure to the benefit of the plaintiff. It further ordered that a receiver be appointed and that the defendants immediately execute to such receiver, "upon his said appointment, a good and sufficient deed conveying to said receiver title to said real property above described, subject to an existing mortgage in the sum of $4,500; and thereafter the court does direct said receiver to sell said real property, subject to the $4,500 mortgage encumbrance thereon; and out of the proceeds of said sale said receiver is hereby authorized to credit said judgment after first paying the costs and expenses of said sale; and a reasonable fee to said receiver". The court further decreed that if proceeds of the sale of such property should be insufficient to pay the judgment, "the defendants Skulason Finance Company, a corporation, and Bardi G. Skulason be and they hereby are ordered to pay any such deficiency in a sum not exceeding $1,362.22".

The circuit court in entering its decree fully understood that it could not by force of that decree alone affect the title to the land in Illinois: *Crocker v. Howland*, 144 Or. 223, 24 P. (2d) 327; *Fall v. Eastin*, 215 U. S. 1, 54 L. Ed. 65, 30 S. Ct. 3, 23 L. R. A. (N. S.) 924, 17 Ann. Cas. 853. It therefore ordered a conveyance of the title to that property to a receiver appointed by the court. The court had jurisdiction of all the defendants except John Doe, the individuals because citizens and residents of Oregon and the corporation because incorporated under the laws of the state of Oregon. The pleadings do not state who was intended by the appellation "John Doe," but it may be assumed from the prayer of the complaint that it had reference to the mortgagee of the Illinois property. The decree, however, protects and does not adversely affect the interest of the mortgagee.

In *Fall v. Eastin*, supra, with regard to the jurisdiction of a court of equity the opinion states:

"The territorial limitation of the jurisdiction of courts of a state over property in another state has a limited exception in the jurisdiction of a court of equity, but it is an exception well defined. A court of equity having authority to act upon the person may indirectly act upon real estate in another state, through the instrumentality of this authority over the person. Whatever it may do through the party it may do to give effect to its decree respecting property, whether it goes to the entire disposition of it or only to effect it with liens or burdens. * * *

"In Corbett v. Nutt, 10 Wall. 464, 475, the doctrine was repeated that a court of equity acting upon the person of the defendant may decree a conveyance of land situated in another jurisdiction, and even in a foreign country, and enforce the

execution of the decree by process against the defendant, but, it was said: 'Neither its decree nor any conveyance under it, except by the party in whom the title is vested, is of any efficacy beyond the jurisdiction of the court.' "

■ The facts in the case before us indicate that the plaintiff's sole means of having the assets of the defendant Loomis applied in satisfaction of plaintiff's judgment was, if at all, by way of the procedure here adopted. By Mrs. Loomis's failure on supplementary proceedings to disclose to the plaintiff her ownership of the Illinois property, and by her acts in regard to that property subsequent to the plaintiff's discovery of such ownership, the plaintiff was deprived of any adequate remedy at law to have the Illinois property subjected to the payment of her judgment against Mrs. Loomis.

One of the earliest cases, and the one probably most frequently cited on the jurisdiction of a court of equity to subject foreign real property of a judgment debtor to satisfaction of the judgment, is *Mitchell v. Bunch*, 2 Paige (N. Y.) 606, 22 Am. Dec. 669. The complainant in that case resided in Havana and the defendant was a citizen and resident of Colombia but temporarily within the state of New York. The complaint alleged that the defendant had ample property "at Carthagena, or elsewhere," to satisfy the judgment but refused to do so; that Spain and Colombia were at war and the plaintiff could not prosecute his claim in the courts of Colombia; and that the defendant was about to depart from New York. The plaintiff prayed for a discovery and the satisfaction of judgment out of the defendant's property. The chancellor, in passing upon

the jurisdiction of the court to grant the relief prayed for, said:

"It is not necessary in this case to inquire, whether under the thirty-ninth section of the title of the revised statutes, which relates particularly to this court and its proceedings, 2 R. S. 174, real property, out of the jurisdiction of the court, can be applied in satisfaction of the complainant's judgment. Independent of the statute, this is clearly a case in which the court has jurisdiction to compel a debtor, whose body is exempt from execution at law, to discover his property, so that it may be applied in satisfaction of his just debts.

\* \* \* \* \* \*

"\* \* \*Although the property of a defendant is beyond the reach of the court, so that it can neither be sequestered nor taken in execution, the court does not lose its jurisdiction in relation to that property, provided the person of the defendant is within the jurisdiction. By the ordinary course of proceeding, the defendant may be compelled either to bring the property in dispute, or to which the complainant claims an equitable title, within the jurisdiction of the court; or to execute such a conveyance or transfer thereof, as will be sufficient to vest the legal title, as well as the possession of the property, according to the *lex loci rei sitae*."

In *Bailey v. Ryder*, 10 N. Y. 363, the plaintiff filed a creditors' bill against the defendant William Ryder and others, seeking, among other things, to reach and apply upon plaintiff's judgment lands in the state of Indiana alleged to have been caused to be purchased by William Ryder with his money, with title taken in the name of others. William Ryder alone appeared and filed an answer. The trial court ordered that the defaulting defendants assign their interest in the Indiana

property to a receiver, but dismissed the bill as to William Ryder. Upon appeal the court said:

"Notwithstanding the forty acres of land, to which William Ryder, in his answer, admits he has title, is situated out of this state, in the state of Indiana, I think that the court of chancery in this state had jurisdiction to compel him to execute such a conveyance or transfer thereof as would be sufficient to vest the legal title, as well as the possession of the land. (Mitchell v. Bunch, 2 Paige, 606.) My conclusion, therefore, is, that that part of the decree of the court below which dismisses the bill of complaint as against the said William Ryder, with costs against the complainant, as to him should be reversed, and that the residue of the decree should be so modified as that its provisions against the defendants, . . . [who defaulted] shall apply as well against William Ryder as against them."

The court in *Fenner et al. v. Sanborn*, 37 Barb. (N. Y.) 610, ordered the defendant to appear and be examined as to his property not exempt by law from execution. On the examination it was disclosed that he was the owner of land in the state of Wisconsin. In regard to the jurisdiction of a court of chancery, the opinion states:

"It was perfectly well settled that a creditor's bill in chancery did not create a lien upon the real estate of the judgment debtor out of the state, but that the court, having jurisdiction of the person of the defendant by the service of process on him in this state, could compel such debtor to appropriate lands or other property owned by him out of the state to the payment of his debts, by compelling him to assign and transfer the same to a receiver to be appointed by the court. (Mitchell v. Bunch, 2 Paige, 606 . . .) And the same principle has been recognized by the court of appeals in Bailey v. Ryder, (6 Seld. 363)."

"Decrees of the court of chancery could not in and of themselves transfer, or direct a sale so as to transfer, the title to real estate of the debtor situate out of the state, so as to make it effectual in such state. But having obtained jurisdiction of the person of the defendant, the court could compel him to execute to a receiver or purchaser such formal conveyance or assignment of such real estate as might be necessary to pass the title thereto under the laws of the state where it was situated; and in default of the defendant to execute the same, he might be punished as for a contempt. (Bailey v. Ryder, 6 Seld. 363.)"

The facts in the case of *Towne v. Campbell*, 35 Minn. 231, 28 N. W. 254, were, briefly, the following: The plaintiff, having recovered judgment against the defendant with execution thereon returned wholly unsatisfied, caused the examination of the defendant on supplementary proceedings. Upon such examination, it was disclosed that the defendant had an interest in real property situated in the territory of Dakota, title to which real estate was in his wife and one other and never had been in the name of the defendant. The trial judge denied the plaintiff's request for the appointment of a receiver, "solely on the ground that he had no jurisdiction to either make an order applying the said real estate interest for the benefit of the plaintiff, or to appoint a receiver herein in reference thereto or in aid of the plaintiff's rights". On appeal, the order denying relief was reversed. After pointing out that proceedings supplementary to execution not only performed the office of creditors' bills but had a somewhat larger scope and purpose, the court observed:

"The court or judge before whom they are pending has as much power to apply the debtor's property to satisfy the creditor's demand as the court of chancery had upon a creditors' bill, and can

enforce such application in a similar manner. To reach, for that purpose, real estate lying out of the jurisdiction, the court of chancery could appoint a receiver, and compel the debtor to execute to him such conveyances as would be effectual to pass the real estate according to the law of the state or country where it was situated. Mitchell v. Bunch, 2 Paige, 606, (22 Am. Dec. 669); Bailey v. Ryder, 10 N. Y. 363. This it could do by virtue, and in the exercise, of its jurisdiction over the person of the debtor, and it did not thereby assume any power over the real estate itself. The debtor, in supplementary proceedings, may, in a similar manner, be compelled to make application of real estate beyond the jurisdiction. The judge ought, therefore, to have determined whether the interest claimed to have been disclosed was of such character that it could be made available by a receiver, with a proper transfer from the judgment debtor, and, if so, to have appointed a receiver, and required such transfer.''

The United States circuit court for the district of Minnesota in *Tomlinson & Webster Manufacturing Company v. Shatto,* 34 Fed. 380, took note that the court of one state had authority to subject real property in another state to the payment of a judgment in favor of the plaintiff and against the defendant, and required the defendant to convey the property to a receiver to be appointed by the court. In that case the proceedings were supplementary to execution, and the court held that such proceedings were in substitution for a creditors' bill. The defendant was ordered to appear before the judge in chambers and there execute to the receiver a conveyance of the real property involved, which was situated in the territory of Dakota. *Towne v. Goldberg (Towne v. Campbell,* supra,) was one of the authorities on which the court therein relied.

Judge Learned Hand, in a concurring opinion in *Manhattan Rubber Manufacturing Company v. Lucey Manufacturing Company*, 5 F. (2d) 39, construed *Bailey v. Ryder*, supra, as authority for the court of one state, in a creditors' suit, to compel the debtor to convey assets outside the jurisdiction of the court for the benefit of the judgment creditor.

In *Muller v. Dows*, 94 U. S. 444, 24 L. Ed. 207, a suit was instituted in the United States circuit court for the district of Iowa to foreclose a mortgage on property belonging to a railroad and located in both Iowa and Missouri. The court decreed a sale of the entire property covered by the mortgage, "and directed the master, who was ordered to make the sale, to execute a good and sufficient deed or deeds to the purchaser. * * * It directed that the two defendant corporations should surrender to the purchaser the property sold and conveyed, upon the execution, approval, and delivery of the master's deed; and that, as further assurance, the Chicago and South-western Railway Company should, on the approval and delivery of the master's deed, convey all the property therein described to the purchaser, by their good and sufficient deed." It was therein held that the action of the trial court was valid and that the purchaser of the Missouri property on the foreclosure sale would acquire good title.

See also, as bearing on the subject under discussion, *Morrison v. Morrison*, 174 Va. 58, 4 S. E. (2d) 776, and *Schmaltz v. York Manufacturing Company*, 204 Pa. 1, 53 A. 522, 93 Am. St. Rep. 782.

■ In our opinion, the circuit court did not err in holding that the conveyance of the Illinois real property to the defendant corporation was fraudulent as

to the defendant Loomis's creditors, particularly the plaintiff, and requiring the answering defendants to execute a deed to the property, subject to the $4,500 mortgage, to a receiver to be appointed by the court.

■ The appealing defendants further assign as error the order of the court providing that if the judgment can not be satisfied out of the proceeds of sale of the Illinois property, the defendant corporation and Skulason pay any such deficiency, in a sum not exceeding $1,362.22. This provision is based on the fact that the motion of the plaintiff for an injunction was denied upon the stipulation of counsel for the defendants in open court that the Illinois land would not be further encumbered during the pendency of the suit. At the time the order was made denying the motion the only encumbrance against that property was a mortgage lien of $2,500. It is true that the mortgage purported to have been given to secure a loan of $5,000, but only $2,500 had actually been advanced by the mortgagee. Almost a year after the motion for an injunction was denied, and while this suit was pending, the defendant corporation executed another note in the sum of $2,000 to the holder of the mortgage and received from the mortgagee the amount of that note. This was a plain violation of the stipulation of counsel.

At the time the hearing on the motion for an injunction was had, the defendant Loomis was indebted to Mr. Skulason in the sum of $637.78; and the trial court permitted a credit in that amount to Skulason and the corporation, to be deducted from the $2,000 last received by the corporation on the mortgage. No error was committed by the court in charging this contingent liability against the corporation and Skulason.

The plaintiff filed a cross-appeal, contending that the circuit court should have entered judgment in her favor and against the defendant corporation and Skulason in the full amount received by the corporation as proceeds of the mortgage, or $4,186. The trial court found that the money received by the corporation as proceeds of the mortgage was, with the exeception of $1,362.22, honestly expended by the corporation and Mr. Skulason; that the same had been expended prior to the institution of this suit; and that the corporation and Mr. Skulason should not be charged with any greater amount than was charged against them. The trial court based its refusal to grant to the plaintiff judgment for the full amount of the money received by the corporation and Skulason on the cases of *Sabin v. Anderson*, supra, and *Swift v. Holdridge*, 10 Ohio 230, 36 Am. Dec. 85, and the following statement from 27 C. J., Fraudulent Conveyances, § 454, page 668:

"The grantee is not chargeable, however, to the extent that, before the creditors have fixed their rights by a judgment and the filing of a bill, he has in good faith restored the property to the debtor, loaned it to him, or used it in paying his debts."

In our opinion, the plaintiff was not entitled to any greater relief than the trial court awarded her. The decree appealed from is in all respects affirmed. The respondent and cross-appellant will recover her costs in this court.