[Civ. No. 21521.   Second Dist., Div. Three.   Dec. 20, 1956.]

ARTHUR JAMES MILLS et al., Appellants, v. ETHEL MARIE MILLS et al., Respondents.

Robert J. Johnston, Brooks Gifford, Sidney H. Wyse and Henry W. Cutter for Appellants.

Burr & Smith for Respondents.

VALLÉE, J.—Appeal from a judgment of dismissal entered after an order sustaining defendants' demurrer to the third amended complaint, to be referred to as the complaint.

The complaint is in four counts. Count I alleges:

In May 1929 Oscar L. Mills, now deceased, purchased from Thomas O. and Annie E. Mills, his father and mother, a parcel of realty located in the county of Will, State of Illinois, and agreed in writing to pay $27,800 therefor. Oscar Mills received a deed to the property, subject to a deed of trust for $14,000, and executed an unsecured promissory note for $13,109.46 payable on demand to the order of "Thomas O. Mills and Annie E. Mills, or Survivor of either" at California Bank, Los Angeles, with interest at 7 per cent, representing the balance of the purchase price.

Oscar Mills did not pay the note, and no part of it has ever been paid. Thomas O. Mills died June 13, 1932. Annie E. Mills died March 28, 1938. After her death the will of Thomas O. Mills was admitted to probate in Illinois and on June 23, 1939, his estate was distributed directly to the heirs at law of Annie E. Mills, who were Oscar L. Mills, her son, plaintiff Arthur James Mills, her son, and plaintiffs Virginia Marsh Gerace, Robert Mills Marsh and Betty Jane Marsh, children of Irma Amber Marsh, her predeceased daughter.

A relation of trust and confidence existed between Oscar Mills on the one hand and Thomas O. and Annie E. Mills on the other hand in that: Oscar was the son of Thomas and Annie; for more than 10 years prior to 1926 plaintiff Arthur Mills had managed the farm and business affairs of

Thomas and Annie; about June 1, 1926, Oscar represented to them that it would be to their best interest to turn the management of their property and business affairs over to him, that he was the most successful member of the family, and they could rely on him, that he was in a better position to do so, Arthur had not had the business experience or ability to look after their affairs and he should no longer be imposed on; in 1929 when Oscar gave his parents the note Thomas was 79 and Annie was 77 years of age, both had had attacks of thrombosis, were in ill health physically and mentally, and were no longer engaged in business of any kind; Thomas and Annie relied on the representations and turned over to Oscar the management of their property and affairs and sought, obtained, and relied on his advice and counseling. Such relation continued during the lifetimes of Thomas and Annie.

A confidential relation existed between Oscar and plaintiff Arthur Mills in that: they were brothers; Oscar, by words, acts, and representations, had assumed a position of trust and confidence with Arthur, advised and counseled him on business affairs, and Arthur relied on and looked to him for advice and counseling from 1926 to the date of Oscar's demise; Oscar advised Arthur to leave the farm and come to work for him, that he would look after their parents and their business affairs; Arthur went to work for Oscar and his continued employment was dependent on Oscar's discretion.

A confidential relation existed between Oscar and plaintiffs Virginia Marsh Gerace, Robert Mills Marsh, and Betty Jane Marsh in that: they are nieces and nephew of Oscar; they were born on February 12, 1919, February 17, 1921, and May 21, 1923, respectively; their mother, Oscar's sister, died September 22, 1934; their father was suffering from a fatal illness at the time; he died September 10, 1938; during the illness of their father Oscar represented to him that in the event his illness caused his demise he (Oscar) would look after and care for Virginia, Robert, and Betty the same as if they were his own children; at the death of their father, on the invitation and suggestion of Oscar, they moved to California and lived with him about two months, and thereafter at his suggestion they established a separate residence.

Oscar fraudulently and deceitfully concealed the indebtedness for the unpaid purchase price of the Illinois realty in that: at the time of the purchase he stated to plaintiff Arthur

Mills he had paid cash to his father and mother for the property at about $100 an acre; on information and belief, after the death of Thomas he stated to Annie he was unable to make payments on the note but that as soon as his money became available he would make payment, that it would cause him considerable embarrassment in his business ventures in California if demand for payment was made on him at that time, that he would pay it to her or his brothers and sisters at the first opportunity; Annie was old and infirm and likely to be imposed on by artful and designing persons at the time; she relied on the representations and was induced thereby to withhold demand for payments; he represented in a verified petition in the proceeding for probate of the estate of Thomas that the only assets of the estate at the time of his father's death were government bonds of an estimated value of $500; he stated to Arthur at the time of his father's death and again at the time of his mother's death that he was fully familiar with their affairs and that they left no estate of value; he stated to Arthur and to Virginia at the time of his mother's death that his father left no money or property and that it had been necessary for him to advance sums for his father's benefit during his lifetime and to pay the funeral expenses; he stated to Arthur at the time of his father's death and again at the time of his mother's death that he would personally take care of any necessary matters and that it would be unnecessary, detrimental, and a waste of time for Arthur to assist him in any way in settlement of their affairs; he stated to his mother and Arthur that nothing should be done regarding the probate of his father's estate since if any interest should inure to Arthur, his (Arthur's) wife, from whom he was separated, would claim her share to the detriment of all concerned, and in any event it would be of no avail as there was no property; about December 28, 1939, plaintiff Virginia Gerace told Oscar she wanted to look over the personal effects, papers, and photographs of Thomas and Annie; Oscar stated to her that neither Thomas nor Annie had any property or effects of value; on information and belief, Oscar knew of the location of a safe deposit box of Thomas during the latter's lifetime and at the time of his death; the identity and location of the box was at no time disclosed to Arthur, and it remained sealed until after the death of Annie when it was opened by an agent of Oscar; Oscar told Arthur the box contained miscellaneous papers of no value. At no time

after the death of Annie did Oscar disclose to any one of plaintiffs the fact that the balance of the purchase price of the Illinois property represented by the note had not been paid.

All of the statements and representations made by Oscar were false and untrue; they were made for the purpose of deferring action to enforce collection of the purchase price of the property and of concealing the existence of the indebtedness from plaintiffs; by reason of such concealment plaintiffs were induced to and did refrain from further investigation and inquiry into the assets of Thomas and Annie and their respective estates.

It is alleged that because of the aforesaid acts, statements, and representations of Oscar, plaintiffs did not discover the existence of the note until January 20, 1952; it was discovered in a locked strongbox among the personal effects, papers, and photographs in a trunk which was moved to California after the death of the father of Virginia, Robert, and Betty, placed in storage for about six months, and thereafter stored among the personal effects of his deceased parents for the use of Oscar and Arthur; the existence of the strongbox was unknown to Arthur until January 20, 1952; neither the existence of the note nor any other fact or circumstance of the indebtedness was in any manner suggested to plaintiffs until that time; they then made an investigation as to the status of the indebtedness and the note.

Defendants are residents of the county of Los Angeles. They are the distributees under the will of Oscar Mills, who died June 10, 1947, and whose will was admitted to probate in the Superior Court of the County of Los Angeles, in which proceeding the time within which a creditor's claim might be filed expired prior to the discovery by plaintiffs of the existence of the note and in which a decree of distribution was made on May 16, 1951. It is further alleged summary probate proceedings were had in Illinois whereby title to the realty was and is now vested in defendants as distributees under the will of Oscar Mills.

At the time the Illinois realty was deeded to Oscar he took possession of the property and retained possession until his death. Since his death defendants have had possession. Since Oscar took possession the value of the property has depreciated. On information and belief, the present value of the property is less than the amount of the note with interest.

Plaintiffs are the equitable owners of an undivided two-thirds interest in the Illinois realty. They have a lien as

heirs of the grantors on the property in the amount of the note with interest.

An actual controversy exists between plaintiffs and defendants relating to their respective rights, titles, and interest in the Illinois realty. Plaintiffs' claim of rights in the property is denied and disputed by defendants.

The prayer of Count I is for declaratory relief.

Counts II, III, and IV reallege the allegations of Count I except those with respect to plaintiffs having a lien on the Illinois property as heirs of the grantors and with respect to an actual controversy existing between the parties. Count II further alleges that at the time Oscar purchased the property and promised to pay the balance of the purchase price he made the promise without any intent to perform it, and defendants hold title to the property in trust for the use and benefit of plaintiffs. The prayer of Count II is for a decree that defendants hold title on a constructive trust for the use and benefit of plaintiffs.

Count III is on the theory defendants are not only constructive trustees of the realty but also of other property received by them as distributees of the estate of Oscar Mills to the extent that the realty is insufficient to provide restitution for the amount of the note. Count IV seeks an adjudication that plaintiffs are the owners of an undivided two-thirds interest in the note and that it be enforced against defendants by requiring them to make restitution of enough assets received by them from the estate of Oscar Mills as that estate would have to do if the note had been discovered and claim filed prior to the expiration of the time for filing claims.

The record does not disclose the ground on which the demurrer was sustained, a practice we have heretofore had occasion to criticize.

### Count I

An actual controversy is alleged to exist between plaintiffs and defendants relating to their respective rights in the Illinois realty. Defendants assert the superior court is without jurisdiction of the cause of action averred because an adjudication of title in realty situated outside the state is sought. Any person who desires a declaration of his rights "in respect to, in, over or upon property," may in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his rights in the premises, and the

court may make a binding declaration of such rights and duties. (Code Civ. Proc., § 1060.) ■ Both declaratory and coercive relief may be granted in the same action. (*Staley* v. *Board of Medical Examiners,* 109 Cal.App.2d 1, 6 [240 P.2d 61]; *Knox* v. *Wolfe,* 73 Cal.App.2d 494, 505 [167 P.2d 3].)

Count I states a cause of action for declaratory relief. (*Maguire* v. *Hibernia Sav. & Loan Soc.,* 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062]; *Lord* v. *Garland,* 27 Cal.2d 840, 851-852 [168 P.2d 5]; *Kessloff* v. *Pearson,* 37 Cal.2d 609, 613 [233 P.2d 899]; *Chas. L. Harney, Inc.* v. *Contractors' State License Board,* 39 Cal.2d 561, 564 [247 P.2d 913].)

■ An action for declaratory relief is a suit in equity. The jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and it has power to enforce its decrees as a necessary incident to its jurisdiction. (*Klinker* v. *Klinker,* 132 Cal.App.2d 687, 694 [283 P.2d 83].) ■ If a complaint for declaratory relief pleads facts sufficient to entitle the plaintiff to some equitable relief, the court will assume jurisdiction of the entire controversy. (*Jones* v. *Feichtmeir,* 95 Cal.App.2d 341, 344 [212 P.2d 933].)

Defendants argue the superior court is without jurisdiction of the cause of action pleaded because the court does not have jurisdiction of the *res*—the realty in Illinois. ■ Equity will not deny any relief whatever to a plaintiff simply because it cannot afford him the full measure of the relief he may need, or because it cannot act directly on the premises to which that relief relates. (*Tully* v. *Bailey,* 46 Cal.App. 2d 195, 200 [115 P.2d 542]. ■ Equity acts *in personam,* not *in rem.* ■ After the court has obtained jurisdiction of the parties it may, by a decree operating *in personam* against them, control their actions with respect to property situated without its jurisdiction whenever such action is necessary for it to effect a complete disposition of the controversy. Thus when realty is situated outside the state and the court has jurisdiction of the parties in the state it can: compel a conveyance of the realty (*Tomaier* v. *Tomaier,* 23 Cal.2d 754, 760 [146 P.2d 905]; *Chamberlain* v. *Wakefield,* 95 Cal.App. 2d 280, 291-292 [213 P.2d 62]); declare and impose a trust relating to the realty (*Caldwell* v. *Ulsh,* 184 Ind. 725 [112 N.E. 518]; *Watkins* v. *Watkins,* 160 Tenn. 1 [22 S.W.2d 1]); order a cancellation of deeds to the realty and require a waiver of a party's interest therein (*Tully* v. *Bailey,* 46 Cal.App.2d 195, 198 [115 P.2d 542]); order an accounting by a mort-

gagee in possession of the realty (*Peninsular etc. Co.* v. *Pacific S.W. Co.,* 123 Cal. 689, 695-697 [56 P. 604]); appoint a trustee of the realty and direct him to execute the trust (*Smith* v. *Davis,* 90 Cal. 25, 29 [27 P. 26]); decree a rescission of a contract of sale of the realty, order an accounting of the lands and proceeds received therefrom, and direct a reconveyance to the plaintiffs (*Promis* v. *Duke,* 208 Cal. 420, 428 [281 P. 613]); decree specific performance of a contract to convey the realty (*Redwood Inv. Co.* v. *Exley,* 64 Cal.App. 455, 458-459 [221 P. 973]); decree the appropriation of the realty to the payment of a debt and set aside a conveyance thereof as in fraud of creditors (*Berger* v. *Loomis,* 169 Ore. 575 [131 P.2d 211]).

*Smith* v. *Davis, supra,* 90 Cal. 25, says (p. 30): "In *Wimer* v. *Wimer,* 82 Va. [890], 901 [5 S.E. 536, 3 Am.St.Rep. 126], we find this language of the court: 'But whilst this is true, it is undoubtedly well settled that in cases of fraud, trust, or contract, courts of equity will, whenever jurisdiction over the parties has been acquired, administer full relief, without regard to the nature or situation of the property in which the controversy had its origin, and even where the relief sought consists in a decree for the conveyance of property which lies beyond the control of the court, provided it can be reached by the exercise of its powers over the person, and the relief asked is of such nature as the court is capable of administering.' . . .

"[P. 32.] The decrees of courts of equity primarily and properly act *in personam,* and at most collaterally only *in rem.* If the parties are within the jurisdiction of the court, an injunction will be granted to stay proceedings in a suit in a foreign country. *A trust will be enforced pertaining to realty, regardless of the situation of the property.* [Italics added.] Courts of equity have, as between the parties, reviewed the judgments of foreign courts, and even sales made under those judgments, when fraud or undue advantage was shown. A specific performance of a contract of sale of lands situated in a foreign country will be decreed in equity. . . .

"A decree to convey land, lying in another state does not affect the title; it only operates upon the person who is to make the conveyance, and it is his act in making the deed that affects the title."

While the decree of a court directing the conveyance of realty outside the state does not of itself affect the title of the realty in the latter state, it is a sufficient basis for a

suit in the courts of the sister state to compel such conveyance. (*Spalding* v. *Spalding*, 75 Cal.App. 569, 580 [243 P. 445].)

██ Plaintiffs do not seek a decree operating directly on the Illinois property or one affecting the title. (*Cf. Getty* v. *Getty*, 130 Cal.App. 519 [20 P.2d 82].) What they seek is a declaration of rights between themselves and defendants to the property. Such a declaration will not operate directly on the property or affect the title. The cause of action averred is not for the recovery of the possession of, or to quiet the title to, or for the enforcement of a lien on, realty. It is for a declaration of the rights of the parties in realty. ██ It is transitory and properly maintainable in the county where the defendants reside. (See *Vaughan* v. *Roberts*, 45 Cal.App.2d 246, 251-256 [113 P.2d 884].)

Plaintiffs argue that on proof of the facts alleged in Count I they will be entitled to a decree that they have a vendor's lien on the Illinois property. We agree. They do not contend the court has jurisdiction to foreclose the lien. ██ Equity does not wait on precedent which exactly squares with the facts in controversy, but will adjust itself to those situations where right and justice would be defeated but for its intervention. (*United States Cas. Co.* v. *Industrial Acc. Com.*, 122 Cal.App.2d 427, 434 [265 P.2d 35].) The cause of action averred is to establish the lien, not to foreclose it. "One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer." (Civ. Code, § 3046.) ██ A vendor's lien, after an actual conveyance, is not a specific and absolute charge on the realty but a mere equitable right to resort to it on failure of payment by the vendee. The right must be established by suit. (*Longmaid* v. *Coulter*, 123 Cal. 208, 212 [55 P. 791].) ██ The lien is of no operative force or effect until established by a decree of court, and may be asserted only by a suit in equity for the purpose of obtaining such a decree. (25 Cal.Jur. 756, § 224.) ██ The right passes to the representatives and heirs of a deceased vendor. (*Selna* v. *Selna*, 125 Cal. 357, 361 [58 P. 16, 73 Am.St.Rep. 47].) ██ An extension of time for payment of the purchase money does not extinguish a vendor's lien. (25 Cal. Jur. 750, § 217.) ██ A vendee is regarded as holding the realty in trust for the benefit of the vendor to the extent of the unpaid purchase money, and the trust descends to the

representatives and heirs of the vendee against whom the lien for the purchase money will be established and enforced. (Civ. Code, § 3048; *Burt* v. *Wilson*, 28 Cal. 632, 638 [87 Am. Dec. 142]; 25 Cal.Jur. 749, § 216.) The superior court has jurisdiction of the cause of action averred in Count I.

Defendants assert the cause of action averred in Count I is barred by the statute of limitations. As we have noted, by Count I plaintiffs seek a declaration that they have a vendor's lien on the Illinois realty. ██ The barring of a claim by the statute of limitations is a procedural matter governed by the law of the forum, regardless of where the cause of action arose. (*Biewend* v. *Biewend*, 17 Cal.2d 108, 114 [109 P.2d 701, 132 A.L.R. 1264].) ██ A suit for declaratory relief is governed by the same limitations as are applicable to other forms of relief. The nature of the right sued on, and not the form of action or relief demanded, determines the applicability of the statute of limitations. (*Leahey* v. *Department of Water & Power*, 76 Cal.App.2d 281, 286 [173 P.2d 69].)

██ Where a party fraudulently conceals the existence of a cause of action against him, the statute of limitations is tolled and the guilty party is estopped to plead the limitations. (*Kimball* v. *Pacific Gas & Elec. Co.*, 220 Cal. 203 [30 P.2d 39]; *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226 [153 P.2d 325]; *Benner* v. *Industrial Acc. Com.*, 26 Cal. 2d 346 [159 P.2d 24].) ██ The doctrine of equitable estoppel may be invoked to prevent a defendant from relying on the statute of limitations. ██ When a defendant who sets up the statute has previously by fraud or any violation of duty to the plaintiff caused him to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which the courts will not allow him to hold. (*Stafford* v. *Schultz*, 42 Cal.2d 767, 775-779 [270 P.2d 1]; *Carruth* v. *Fritch*, 36 Cal.2d 426, 429-434 [224 P.2d 702, 24 A.L.R.2d 1403]; *Sears* v. *Rule*, 27 Cal.2d 131, 145-148 [163 P.2d 443]; *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 228-235 [153 P.2d 325]; *Adams* v. *California Mut. B. & L. Assn.*, 18 Cal.2d 487, 488-489 [116 P.2d 75]; *Strangman* v. *Arc-Saws, Inc.*, 123 Cal.App.2d 620-624 [267 P.2d 395]; *United States Cas. Co.* v. *Industrial Acc. Com.*, 122 Cal.App.2d 427, 433, 434 [265 P.2d 35]; *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 115 Cal.App.2d 684, 689-692 [252 P.2d 649]; *Schaefer* v. *Kerber*, 105 Cal.App.2d 645, 647 [234 P.2d 109]; *Berkey* v. *Halm*, 101 Cal.App.2d 62, 68

[224 P.2d 885]; *Herman* v. *Brown,* 91 Cal.App.2d 758, 761 [205 P.2d 1086]; *Anderson* v. *Thacher,* 76 Cal.App.2d 50, 69-72 [172 P.2d 533]; *Twining* v. *Thompson,* 68 Cal.App.2d 104, 111-113 [156 P.2d 29]; *Laraway* v. *First Nat. Bank of La Verne,* 39 Cal.App.2d 718, 726-731 [104 P.2d 95]; *Miles* v. *Bank of America,* 17 Cal.App.2d 389, 397-399 [62 P.2d 177]; annos.: 130 A.L.R. 8, 49; 24 A.L.R.2d 1413, 1435.)

Thus it has been held that a defendant may be estopped to plead limitations where he had induced inaction on the part of the plaintiff by his false representations or fraudulent concealment. (*Sears* v. *Rule,* 27 Cal.2d 131, 145-148 [163 P.2d 443]; *Pashley* v. *Pacific Elec. Ry. Co.,* 25 Cal.2d 226, 228-235 [153 P.2d 325]; *Anderson* v. *Thacher,* 76 Cal.App.2d 50, 69-72 [172 P.2d 533]; *Twining* v. *Thompson,* 68 Cal.App.2d 104, 111-113 [156 P.2d 29].) And an estoppel of a party ordinarily is operative against the privies in estate. (*In re Mohr's Estate,* 212 Wis. 198 [248 N.W. 143, 148]; *Izard* v. *Mikell,* 173 Miss. 770 [163 So. 498, 499].) The rule that fraud may serve as the basis of estoppel against asserting the bar of limitations applies irrespective of whether or not the action claimed to be barred is itself based on fraud. (*Carruth* v. *Fritch,* 36 Cal.2d 426 [224 P.2d 702, 24 A.L.R.2d 1403]; *Pashley* v. *Pacific Elec. Ry. Co.,* 25 Cal.2d 226 [153 P.2d 325]; *Sibert* v. *Shaver,* 111 Cal.App.2d 833, 840 [245 P.2d 514].) A court of equity will keep alive or restore a lien where the equities of the case require it and the parties intended that it should not be extinquished, as where it has been discharged by fraud or mistake. (*Kern* v. *A. P. Hotaling Co.,* 27 Ore. 205 [40 P. 168, 170, 50 Am.St.Rep. 710]; *Seymour* v. *Alkire,* 47 W.Va. 302 [34 S.E. 953, 954]; *Drake Lbr. Co.* v. *Semple,* 100 Fla. 1757 [130 So. 577, 581, 75 A.L.R. 687]; *Backer* v. *Pyne,* 130 Ind. 288 [30 N.E. 21, 22, 30 Am. St. Rep. 231]; 33 Am.Jur. 438, § 38. *Cf. Richards* v. *Griffith,* 92 Cal. 493, 496 [28 P. 484, 27 Am.St.Rep. 156].) Whether an estoppel exists—whether the acts, representations, or conduct lulled a party into a sense of security preventing him from instituting proceedings before the running of the statute, and whether the party relied thereon to his prejudice—is a question of fact, not of law. (*Industrial Indem. Co.* v. *Industrial Acc. Com.,* 115 Cal.App.2d 684, 690 [252 P.2d 649].)

*Posey* v. *Brixey,* 133 Okla. 98 [271 P. 230], on its facts is on all fours with the case at bar. It was an action by a vendor against a vendee to recover the balance of the purchase price

of realty and for foreclosure of a vendor's lien thereon. By fraud of the vendee, the vendor did not bring the action within the statutory period for bringing an action on the principal obligation. The court held that (271 P. 232):

"[T]he vendee by his demurrer to vendor's evidence admits that he has not paid the full consideration money, under circumstances that show a want of fidelity on his part in the transaction sufficient to constitute fraud, as in this case, though the cause be barred as a law action on contract by two years, under the first subdivision of section 185, C.O.S. 1921, but brought by the vendor within two years after discovery of nonpayment of the full purchase money under the third subdivision of said section 185, equity will interfere to prevent the vendee from reaping the benefit of the advantage thus unfairly gained and sought to be held under a defense based on the statute barring an action on contract after five years of the accrual of the cause."

■ It is argued that section 337, subdivision 1, of the Code of Civil Procedure governs.[1] This is not an action on the note and it is not an action on a contract, obligation or liability founded on an instrument in writing. The gist of the cause of action averred is fraud allegedly perpetrated by Oscar Mills. Section 337, subdivision 1, has no application.

■ When a party is guilty of fraudulent concealment of the cause of action the statute is deemed not to become operative until the aggrieved party discovers the cause of action. (Code Civ. Proc., §§ 312, 338, subdivision 4; *Stafford* v. *Schultz*, 42 Cal.2d 767, 778 [270 P.2d 1]; *Hansen* v. *Bear Film Co., Inc.*, 28 Cal.2d 154, 178 [168 P.2d 946]; *Sears* v. *Rule*, 27 Cal.2d 131, 149 [163 P.2d 443]; *Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 229, 232 [153 P.2d 325]; *Twining* v. *Thompson*, 68 Cal.App.2d 104, 111 [156 P.2d 29]; *Laraway* v. *First Nat. Bank of La Verne*, 39 Cal.App.2d 718, 726 et seq. [104 P.2d 95].) ■ To bring himself within section 338, subdivision 4, a party must allege when the fraud was discovered, the circumstances of the discovery, what the discovery was, and why it was not discovered sooner. (*Tognazzini* v. *Tognazzini*, 125 Cal.App.2d 679, 686-687 [271 P.2d 77].) ■ When the facts are susceptible to opposing inferences, whether a party had notice of circumstances suffi-

---

[1] "Within four years: 1. An action upon any contract, obligation or liability founded upon an instrument in writing, except as provided in Section 336a of this code. . . ."

cient to put a prudent man on inquiry as to a particular fact, and whether by prosecuting such inquiry he might have learned such fact, are questions of fact to be determined by the trial court. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 440 [159 P.2d 958] ; *Bowman* v. *McPheeters,* 77 Cal. App.2d 795, 798, 802-803 [176 P.2d 745] ; *Blackman* v. *Howes,* 82 Cal.App.2d 275, 278-279 [185 P.2d 1019, 174 A.L.R. 1004].)

Count I sufficiently pleads facts showing when the fraud was discovered, the circumstances of the discovery, what the discovery was, and why it was not discovered sooner. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 436-444 [159 P.2d 958].)

### Count II

In Count II a decree is sought that defendants hold title to the Illinois realty in trust for the benefit of plaintiffs. It is evident from what has been said with respect to Count I that the court has jurisdiction of the cause of action averred. Defendants assert the cause of action is barred by the provisions of section 338, subdivision 4, of the Code of Civil Procedure. Facts showing that a confidential relation existed between Oscar Mills on the one hand and his father, mother, and plaintiffs on the other are alleged. If there is a duty to speak because of a confidential relation, a failure to do so is a species of fraud for which equity may afford relief. (*Larrabee* v. *Tracy,* 21 Cal.2d 645, 651 [134 P.2d 265].)

Civil Code, section 2217, reads: "An involuntary [constructive] trust is one which is created by operation of law."

Civil Code, section 2223, reads: "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."

Civil Code, section 2224, provides: "One who gains a thing by fraud, . . . the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Civil Code, section 2243, reads: "Everyone to whom property is transferred in violation of a trust, holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration."

In *Bainbridge* v. *Stoner,* 16 Cal.2d 423 [106 P.2d 423], the court stated (p. 428) : "The theory of a constructive trust was adopted by equity as a remedy to compel one to restore property to which he is not justly entitled, to another. The person holding the property may have acquired it through

*fraud,* undue influence, *breach of trust, or in any other improper manner* and he is usually personally liable in damages for his acts. But the one whose property has been taken from him is not relegated to a personal claim against the wrongdoer which might have to be shared with other creditors; he is given the right to a restoration of the property itself. The title holder is, therefore, said to be a constructive trustee holding title to the property for the benefit of the rightful owner, but he is not charged with responsibility based upon either the actual or presumed intention of the parties. (Sec. 2224, Civ. Code; *Burns* v. *Ross,* 190 Cal. 269 [212 P. 17]; Restatement, Restitution, sec. 160.)'' [Italics added.] (See also *Rankin* v. *Satir,* 75 Cal.App.2d 691, 695 [171 P.2d 78]; Scott on Trusts, 2317, § 462.2.)

Assuming the averments of Count II to be true, as we must, the conduct, acts, and representations of Oscar Mills amounted to fraudulent concealment and a violation of his trust. █ Defendants who received the Illinois property in violation of the trust are involuntary trustees of the property for the benefit of plaintiffs. (Civ. Code, § 2243.) █ Ordinarily in a suit to establish an involuntary trust, the statute of limitations begins to run when the trust relation is terminated. (*Knapp* v. *Knapp,* 15 Cal.2d 237, 241 [100 P.2d 759].) But Count II is grounded in fraud. The applicable statute is, as defendants apparently concede, section 338, subdivision 4, of the Code of Civil Procedure, and under the principle stated at length in *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 436-444 [159 P.2d 958], which need not be repeated, the statute began to run in January 1952, at the time plaintiffs discovered the fraud. The action was filed on July 27, 1953, within three years after discovery.

Plaintiffs have shown by the allegations of Count II that a confidential relation existed between Oscar Mills and his parents and plaintiffs; that they had no notice or knowledge of any suspicious facts or circumstances prior to January 1952; that at that time plaintiffs were first put on notice of possible fraud and then made discovery. It follows that the cause of action averred in Count II is not barred by section 338, subdivision 4, of the Code of Civil Procedure. (*Knapp* v. *Knapp, supra,* 15 Cal.2d 237, 241-242.)

### Count III

This count seeks to have it decreed that defendants hold title not only to the Illinois property in trust for the benefit

of plaintiffs but also of other property received by them as distributees of the estate of Oscar Mills to the extent the Illinois realty is insufficient to provide restitution of the amount due plaintiffs under the terms of the note. It is averred the value of the Illinois property is not sufficient to provide restitution of the amount due on the note and that defendants received sufficient therefor from the estate of Oscar Mills. Insofar as Count III seeks a decree that defendants hold title to the Illinois realty in trust for the benefit of plaintiffs, it is no different from Count II and is surplusage. We know of no theory on which it can be decreed that defendants hold property received by them from the estate of Oscar Mills other than the Illinois realty in trust for the benefit of plaintiffs. None is advanced and no authority is cited in support of the proposition. Plaintiffs have no lien on such other property. (25 Cal.Jur. 746, § 213.) The demurrer to Count III was properly sustained.

### Count IV

Plaintiffs say Count IV "only seeks to impress with a trust, for the benefit of appellants, the real property located in Illinois or the proceeds thereof and such other property which descended to the respondents from the estate of Oscar L. Mills if such other property is necessary to make complete restitution for the fraud of said Oscar L. Mills." We see no difference between Count IV and Count III. The demurrer to Count IV was properly sustained.

A general demurrer to a complaint containing more than one count should be overruled if there is a good count stating a cause of action. If it is erroneously sustained, the judgment of dismissal should be reversed. (*Lord* v. *Garland,* 27 Cal.2d 840, 850 [168 P.2d 5] ; *Shook* v. *Pearson,* 99 Cal. App.2d 348, 351 [221 P.2d 757] ; *Armstrong* v. *Adams,* 102 Cal.App. 677, 681 [283 P. 871] ; 21 Cal.Jur. 117, § 76.)

Judgment reversed.

Shinn, P. J., and Wood (Parker), J., concurred.